50 F.3d 1511
 67 Fair Empl.Prac.Cas. (BNA) 537, 32
Fed.R.Serv.3d 183
Gaston GOMEZ, Plaintiff-Appellant/Cross-Appellee,
v.
MARTIN MARIETTA CORPORATION, Defendant-Appellee/Cross-Appellant.
 Nos. 93-1272, 93-1297.
 United States Court of Appeals,
Tenth Circuit.
 March 14, 1995.
Rehearing Denied May 16, 1995.
 
 Barry Douglas Roseman, Denver, CO, for plaintiff-appellee/cross-appellant.
 John R. Webb (Susan B. Prose, with him on the brief), of Holme Roberts & Owen, Denver, CO, for defendant-appellant/cross-appellee.
 Before SEYMOUR, Chief Judge, McWILLIAMS, and ANDERSON, Circuit Judges.
 SEYMOUR, Chief Judge.
 
 
 1
 Gaston Gomez sued his former employer, Martin Marietta Corporation (MMC), alleging breach of contract and discrimination on the basis of age, race, and national origin. Mr. Gomez' contract and age discrimination claims were tried to a jury, which returned a verdict for Mr. Gomez on the contract claim and for MMC on the age discrimination claim. The district court held for MMC on the race and national origin claims. Both parties appeal, and we affirm.
 
 I.
 
 2
 The facts generating this lawsuit may be briefly stated as follows. Mr. Gomez, who was a supervisor at MMC, was discharged after asking two hourly employees to make a trailer hitch for him on company time, using scrap metal and company equipment. It is undisputed that this work took the employees less than half an hour, that the scrap metal used was going to be discarded, and that the work was done on "variance" time, that is, time when the employees had no work to do. Mr. Gomez presented evidence that "G jobs", or personal work done on company time using company equipment, were often done, that supervisory personnel knew about them, and that until the instant incident employees were not disciplined for doing them. Mr. Gomez also offered personnel documents that he asserted gave rise to a contractual obligation on the part of MMC to use progressive discipline with its employees and to apply discipline uniformly and consistently. Mr. Gomez had no history of prior misconduct and MMC did not follow progressive disciplinary procedures in discharging him.
 
 
 3
 Mr. Gomez alleged that MMC terminated his employment in violation of an employment contract arising from MMC personnel documents. Mr. Gomez also asserted that MMC discriminated against him on the basis of race, national origin, and age in violation of 42 U.S.C. Sec. 1981, 42 U.S.C. Secs. 2000e et seq. (Title VII), and 29 U.S.C. Secs. 621 et. seq. (Age Discrimination in Employment Act or ADEA). Prior to trial, the district court dismissed the section 1981 claims for discriminatory discharge and failure to promote. The ADEA and contract claims were tried to a jury, which decided the ADEA claim in favor of MMC and returned a verdict for Mr. Gomez on the contract claim in the amount of $161,782.50. The district court subsequently granted judgment in favor of MMC on the Title VII claims.
 
 
 4
 On appeal, MMC contends that: 1) the evidence of an employment contract based on MMC personnel documents was insufficient to send the issue to the jury; 2) the trial court erred in its jury instructions on the contract claim; 3) the court erred in admitting evidence of MMC's treatment of other employees; and 4) the court erred in admitting evidence relevant to front pay. Mr. Gomez cross-appeals, arguing that: 1) the district court and the magistrate erred in denying his motion for discovery sanctions; 2) the district court and the magistrate erred in limiting discovery; and 3) the court erred in failing to apply the Civil Rights Act of 1991 to this case.II.
 
 A.
 
 5
 MMC first appeals the district court's determination that a jury question was presented regarding whether the company's personnel documents created an implied contract to follow progressive discipline procedures. MMC contends that the documents upon which Mr. Gomez relies contain only vague assurances that cannot create a contract under Colorado law.
 
 
 6
 Although an employee hired for an indefinite period is presumed to be employed at will, the Colorado courts have held that "an employee manual, unilaterally published by the employer, may serve as a basis for altering the terms of an employment otherwise terminable at will." Continental Air Lines, Inc. v. Keenan, 731 P.2d 708, 710 (Colo.1987); see also Adams County Sch. Dist. v. Dickey, 791 P.2d 688, 693 (Colo.1990); Churchey v. Adolph Coors Co., 759 P.2d 1336, 1348-49 (Colo.1988); Tuttle v. ANR Freight Sys., Inc., 797 P.2d 825, 827 (Colo.App.1990); Cronk v. Intermountain Rural Elec. Ass'n, 765 P.2d 619, 622-23 (Colo.App.1988). "[A]n employer's distribution to employees of handbooks or policy manuals, which contain specific procedures for termination of employment, when relied upon by an employee and supported by the consideration of continued service, may result in the employer becoming contractually bound to comply with those procedures." Cronk, 765 P.2d at 622-23.
 
 
 7
 An employee may enforce the provisions of personnel documents by two alternative theories: he may proceed under ordinary contract principles by showing that the documents constituted an offer which he accepted by his initial or continued employment, or he may rely on a promissory estoppel theory by showing that the employers should have reasonably expected the employee to consider the documents a commitment, that the employee reasonably relied on them, and that justice requires that they be enforced. See Dickey, 791 P.2d at 693; Churchey, 759 P.2d at 1348-49. Although the Colorado courts have recognized that language in an employment document may be so vague that it does not constitute an offer as a matter of law, see Tuttle, 797 P.2d at 828, those courts have repeatedly stated that " 'when the existence of a contract is in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists.' " Cronk, 765 P.2d at 623 (quoting I.M.A., Inc. v. Rocky Mountain Airways, Inc., 713 P.2d 882, 887 (Colo.1986)); see also Tuttle, 797 P.2d at 827.
 
 
 8
 Mr. Gomez offered several personnel documents at trial which he alleged created enforceable obligations on the part of MMC to follow the progressive discipline procedures set out in those materials and to impose the same discipline upon Mr. Gomez that it imposed on other employees who had committed misconduct of a similar nature. MMC Standard Procedure No. 2.7 sets out the four steps of MMC's progressive discipline policy. Under Procedure 2.7, discharge is to be used when other disciplinary measures have failed. Procedure 2.7 also provides that discharge may be used without a prior verbal reprimand if warranted by the severity of the offense. It states:
 
 
 9
 Appropriate disciplinary action will be taken when an employee engages in a practice which is inconsistent with published rules or ordinary, reasonable, common sense rules of conduct necessary to the welfare of the company and its employees.
 
 
 10
 The objective of disciplinary action is to achieve correction and to provide a deterrent against future occurrences. The concept of progressive discipline, i.e., increasingly severe disciplinary measures for repeated violations may govern the action to be taken against an employee. However, if the nature and severity of the offense warrants, the company may institute a written reprimand, suspension, discharge, or other actions deemed appropriate without taking prior disciplinary steps.
 
 
 11
 ..
 
 
 12
 Corrective disciplinary steps that may be utilized are:
 
 1. Verbal Reprimand
 
 13
 Used in cases of infractions of rules or regulations or of substandard job performance which, if continued, could become significant.
 
 2. Written Reprimand
 
 14
 Used in cases of significant or repeated infractions of rules or regulations or of substandard job performance.
 
 3. Suspension
 
 15
 This action may be taken when the employee's job performance and/or misconduct has become unsatisfactory.
 
 4. Discharge
 
 16
 Used when other disciplinary steps have failed and employee's job performance remains substandard or unsatisfactory.
 
 
 17
 Aplt.App. at 256. The Supervisor's Handbook, which refers to Procedure 2.7, contains virtually identical language. See id. at 254-55.
 
 
 18
 MMC argues that because these documents do not require that progressive discipline be used in all cases, as a matter of law they cannot be the basis of a contractual obligation to apply progressive discipline to Mr. Gomez. We disagree. We view this case as analogous to Cronk. In Cronk, the employment manual established termination procedures and also set "forth certain express events which might cause the employee to be terminated. In addition, the manual states that other reasons, not so expressed, could be grounds for termination, 'as long as such legitimate reasons constitute just cause.' " Cronk, 765 P.2d at 623 (emphasis added). The court held that the manual was sufficient to raise a fact issue on whether the company was obligated to follow its procedures, even though the quoted language, as in this case, vested the employer with some discretion in deciding whether termination without those procedures was appropriate. Cronk also recognized that an employee would be entitled to enforce the procedures by demonstrating the elements of promissory estoppel. Id. at 624.
 
 
 19
 Likewise, in Churchey the personnel manual provided that certain offenses were subject to progressive discipline, while "certain types of violations, including dishonesty, 'are of a nature so serious that they are cause for immediate dismissal upon the first offense.' " Churchey, 759 P.2d at 1347. The defendant there urged that its personnel policies were not binding. The court disagreed, stating that "there appears to be a genuine dispute as to whether [the employer] was required to follow its progressive discipline policy in Churchey's case. Wrongful discharge claims based on an employer's failure to follow progressive discipline procedures have been recognized in several cases." Id. at 1349 n. 6. The court held that the plaintiff had presented a fact issue under both an implied contract theory and under a promissory estoppel approach. Id. at 1349. We view these cases as a clear indication that under Colorado law, a binding obligation may arise from a personnel manual even though that manual vests some discretion in the employer, so long as a fact finder could reasonably conclude that the employer was obligated under either contract or estoppel principles to apply the disputed procedures to the employee.
 
 
 20
 Mr. Gomez also contends that other personnel documents obligated MMC to treat its employees uniformly and consistently when disciplining them, and that MMC violated that obligation in discharging him without following progressive discipline. The Introduction to Management states that:
 
 
 21
 While it is appropriate that managers be permitted some latitude in the determination of the need for corrective action, and some flexibility in the methods used to bring about compliance, depending on the environment and the individual involved, a common thread of uniformity is necessary in the interest of fair and equitable treatment for all employees. To serve this end, Personnel will monitor disciplinary actions from the standpoint of consistent application of policy.
 
 
 22
 Aplee.App. at 367 (emphasis added). The Introduction further states that "[t]here must be a high degree of consistency in applying our own policies and procedures," id. at 368, and directs supervisors to "[m]ake sure all employees are afforded uniform treatment--show no favoritism and do not overlook violations of rules or breaches of common sense rules of conduct," id. at 369.
 
 
 23
 Mr. Gomez asserts that such an obligation also arises from the manual provided to employees such as Mr. Gomez who participated in an employee relations workshop. That manual stated that it was "intended to be used as a training guide and reference source for the participants after the workshop." Aplt.App. at 260. The manual set out the "Hot Stove" rule, under which "[e]very one who touches the stove gets burned--discipline must apply equally, regardless of who is involved. Consistency clearly establishes limits of [acceptable] behavior." Id. at 271 (emphasis added). Finally, the manual stated that "[e]qual treatment is the first administrative principle of discretionary procedure." Id. at 272. We conclude that under Colorado law, the manual and the Introduction to Management are each sufficient to raise a jury question on whether MMC assumed an enforceable obligation to provide uniform treatment when disciplining its employees.
 
 B.
 
 24
 MMC argues that the trial court committed reversible error in failing to instruct the jury that Mr. Gomez had to identify specific promises allegedly breached by MMC.
 
 
 25
 A determination of the substance of a jury instruction in a diversity case is a matter of state law, while the grant or denial thereof is a matter of procedure controlled by federal law. Further, the question of whether an incorrect instruction given in a diversity case is prejudicially erroneous is governed by federal procedural law.
 
 
 26
 Brownlow v. Aman, 740 F.2d 1476, 1490 (10th Cir.1984) (citations omitted). "The admission or exclusion of a jury instruction is within the sound discretion of the trial court." Harris Mkt. Research v. Marshall Mktg. & Communications, Inc., 948 F.2d 1518, 1528 (10th Cir.1991). In reviewing MMC's argument,
 
 
 27
 this court examines the record as a whole to determine whether the instructions state the applicable law and provide the jury with an appropriate understanding of the issues and the legal standards to apply. "[N]o particular form of words is essential if the instruction as a whole conveys the correct statement of the applicable law." An erroneous jury instruction requires reversal "only if we have substantial doubt whether the instructions, taken together, properly guided the jury in its deliberations."
 
 
 28
 Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1424 (10th Cir.1993) (citations omitted).
 
 
 29
 Our review of the pertinent instructions in this case reveals that they track virtually verbatim the governing law on both breach of contract and promissory estoppel set out in Keenan, 731 P.2d at 711-12. As such, they state correctly the applicable law. Moreover, they do so with sufficient specificity to provide proper guidance to the jury. In rejecting MMC's argument that the jury should be instructed as to specific policies relied on by Mr. Gomez, the court stated:
 
 
 30
 I can't define in every aspect of what you can argue and what you can't argue. If you have a broad range of argument. [sic] As long as there is evidence in the record from which it is fair to argue a particular inference of fact, you can argue it.
 
 
 31
 Now, I think that's the law. And this term "personnel policy" has been discussed ad infinitum and ad nauseum throughout this trial. You know what we are talking about, ...--opposing counsel knows what we are talking about, and every juror knows what we are talking about. If he gets up and says something that's not correct, I am assuming that you, since you go after he speaks, are going to correct him. That's your job. I am not going to put argumentative matter in the instructions.
 
 
 32
 Aplt.App. at 241-42. We discern no abuse of discretion here.[1]C.
 
 
 33
 MMC contends that the trial court committed reversible error in admitting evidence of the disciplinary actions taken by MMC against two other employees. MMC argues that this evidence was irrelevant because Colorado law does not permit an implied contract to arise from a course of dealing, because one of these employees worked in a separate operating group, and because the conduct for which these employees were disciplined was qualitatively different from that of Mr. Gomez.
 
 
 34
 Under the federal rules, relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. "The Rule's basic standard of relevance thus is a liberal one." Daubert v. Merrell Dow Pharmaceuticals, Inc., --- U.S. ----, ----, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469 (1993). "The determination of whether the evidence is relevant is a matter within the sound discretion of the trial court, and we will not disturb that decision on appeal absent a showing of a clear abuse of discretion." Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp., 579 F.2d 561, 566 (10th Cir.1978). "Moreover, error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties, and the burden of demonstrating that substantial rights were affected rests with the party asserting error." K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1155-56 (10th Cir.1985).
 
 
 35
 We begin our review by observing that MMC's argument is based on a patently inaccurate and self-serving articulation of the facts to which the evidence at issue was directed. Contrary to MMC's assertion, Mr. Gomez did not offer evidence of the discipline imposed on these employees to establish the existence of a contract. As set out above, Mr. Gomez presented personnel documents as proof that MMC had an enforceable obligation to progressively discipline him before termination and to discipline similarly situated employees uniformly. Thus Mr. Gomez offered the evidence of treatment afforded other employees not to establish these obligations but to demonstrate that MMC had breached them in his case. MMC's treatment of other arguably similar misconduct is clearly probative of whether its treatment of Mr. Gomez breached its obligation to discipline its employees consistently. Moreover, in view of the evidence that the personnel documents upon which Mr. Gomez relied applied plant-wide, we see no significance in the fact that one of these employees worked in a separate group. Finally, we cannot say that the conduct of these employees was so different from that of Mr. Gomez that it rendered the evidence irrelevant as a matter of law, nor can we say that MMC has shown that the evidence, even if erroneously admitted, affected its substantial rights.
 
 D.
 
 36
 The jury awarded Mr. Gomez $80,485.50 as lost future wages and benefits. MMC contends the trial court erred in allowing Mr. Gomez to present expert testimony on front pay because that evidence was purely speculative.[2] "[T]he district court has broad discretion in determining whether or not to admit expert testimony, and we review a decision to admit or deny such testimony only for abuse of discretion." Orth v. Emerson Elec. Co., White-Rodgers Div., 980 F.2d 632, 637 (10th Cir.1992).
 
 
 37
 MMC contends that the expert's testimony on front pay was too speculative because Mr. Gomez had held six jobs in the fifteen year period before he began work at MMC and because MMC had laid off a significant number of employees in Mr. Gomez' job classification after he was discharged. The expert based her testimony regarding the amount of front pay which would make Mr. Gomez whole by assuming that Mr. Gomez, who had been with MMC about six years when he was discharged, would either have stayed with MMC or voluntarily moved to a job at an equal or better rate of pay. She relied on appropriate studies showing the adverse effect a termination for cause has on an employee's future earnings potential. She further relied on the fact that Mr. Gomez had been working on strong programs to conclude that he probably would not have been laid off. MMC presented no evidence showing conclusively that Mr. Gomez would have been among those laid off; indeed MMC's expert refused to provide an opinion on whether Mr. Gomez would have been laid off, stating that the question was one for the jury.
 
 
 38
 Although an expert opinion must be based on "facts which enable [her] to express a reasonably accurate conclusion as opposed to conjecture or speculation, ... absolute certainty is not required." Jones v. Otis Elevator Co., 861 F.2d 655, 662 (11th Cir.1988) (citations omitted). MMC did not establish that the challenged opinions had no basis in fact. MMC cross-examined Mr. Gomez' expert on the asserted weaknesses of her assumptions and presented expert testimony in its favor. While the weaknesses in the data upon which Mr. Gomez' expert relied go to the weight the jury should have given her opinions, they did not render her testimony too speculative as a matter of law.[3] See Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 654 (10th Cir.1991); Lutz Farms v. Asgrow Seed Co., 948 F.2d 638, 648 (10th Cir.1991); Jones, 861 F.2d at 663.
 
 III.
 A.
 
 39
 In his cross-appeal, Mr. Gomez raises several issues related to discovery rulings.[4] He alleges that the magistrate judge erred in refusing to impose sanctions on MMC for destroying evidence subject to discovery. He further contends that the district court used the wrong legal standard in rejecting his objections to this ruling. Finally, Mr. Gomez argues that the magistrate judge and the district court improperly limited the scope of his discovery.
 
 
 40
 We review rulings on discovery sanctions for abuse of discretion in light of the totality of the circumstances. Gocolay v. New Mexico Fed. Sav. & Loan Ass'n, 968 F.2d 1017, 1020 (10th Cir.1992). The destroyed material underlying Mr. Gomez' motion for sanctions consisted of investigative files on MMC employees alleged to have committed ethical violations. In addressing the sanctions request, the magistrate judge pointed out that Mr. Gomez had been given the chance to review 400 files and that the destroyed files were a summary of original files which MMC had provided to Mr. Gomez. The magistrate judge concluded that the destruction of the files therefore had not prejudiced Mr. Gomez and denied his motion for sanctions. The district court rejected Mr. Gomez' objections to the magistrate judge's ruling, noting that Mr. Gomez had not shown the decision to be either clearly erroneous or contrary to law.
 
 
 41
 Mr. Gomez first contends that the court employed the wrong legal standard and should have reviewed the decision de novo. He argues that his request for sanctions constituted a dispositive motion because he sought the entry of a default judgment as a remedy. He contends that review of the magistrate's ruling was therefore governed by Rule 72(b) of the Federal Rules of Civil Procedure, which applies to dispositive matters and requires the district court to make a de novo review upon the record, rather than by Rule 72(a), which governs nondispositive matters and requires the "clearly erroneous or contrary to law" standard employed by the district court here. However, "[t]he penalty to be imposed, rather than the penalty sought by the movant, controls the scope of the magistrate's authority." 7 James W. Moore et al., Moore's Federal Practice, p 72.04[2.-4], at 72-66 (2d ed. 1994). Even though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction the order falls under Rule 72(a) rather than Rule 72(b). See id.; see generally Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1462 (10th Cir.1988). Because the magistrate judge here refused to impose a dispositive sanction, the district court correctly reviewed the ruling under Rule 72(a). Moreover, our review of the record has convinced us that the refusal to impose sanctions did not rise to an abuse of discretion.
 
 
 42
 Mr. Gomez also asserts that the magistrate judge and the district court unduly limited the scope of his discovery. "We review orders relating to discovery for an abuse of discretion." Johnson v. Thompson, 971 F.2d 1487, 1497 (10th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1992). We agree with Mr. Gomez that the scope of discovery under the federal rules is broad and that "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). We have pointed out that discovery in discrimination cases should not be narrowly circumscribed. See Rich v. Martin Marietta Corp., 522 F.2d 333, 343-44 (10th Cir.1975). It is well settled that in a Title VII suit, an employer's general practices are relevant even when a plaintiff is asserting an individual claim for disparate treatment. See Scales v. J.C. Bradford & Co., 925 F.2d 901, 906 (6th Cir.1991). "However, this desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Id. It appears from the record that discovery in this case was a long and hotly contested battle. Although Mr. Gomez did not receive all the material he sought, he was provided abundant discovery. We hold that the district court did not abuse its discretion in the balance struck between the benefit to Mr. Gomez and the burden upon MMC.
 
 
 43
 Finally, we address briefly Mr. Gomez' claim that the trial court erred in refusing to apply the 1991 Civil Rights Act to his case. Mr. Gomez seeks the benefit of that Act's provisions dealing with the scope of 42 U.S.C. Sec. 1981 and allowing jury trials in Title VII actions. While appeal of this case was pending, the Supreme Court handed down Landgraf v. USI Film Prods., --- U.S. ----, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), and Rivers v. Roadway Express, Inc., --- U.S. ----, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), which are dispositive of these arguments. In Rivers, the Court held that the 1991 Act's definition of conduct covered by section 1981 is not to be given retroactive effect. Id. --- U.S. at ----, 114 S.Ct. at 1517; see also Simons v. Southwest Petro-Chem, Inc., 28 F.3d 1029, 1031-32 (10th Cir.1994). In Landgraf, the Court likewise held that the Act's provision permitting a jury trial in Title VII cases does not apply retroactively. See Landgraf, --- U.S. at ----, 114 S.Ct. at 1488; see also Steinle v. Boeing Co., 24 F.3d 1250, 1251 (10th Cir.1994). Accordingly, Mr. Gomez' arguments on these issues are foreclosed.
 
 
 44
 Finally, we deny Mr. Gomez' motion to certify the state law questions in this case to state court. We grant his motion to file a supplemental appendix.
 
 
 45
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 MMC also argues that the court's instruction improperly allowed the jury to find a contract by reading together documents that were insufficient separately. See Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1464-65 (10th Cir.1991). As we have discussed in part IIA supra, each document relied on by Mr. Gomez contained a sufficient showing with respect to an obligation based either on contract or on estoppel
 
 
 [2]
 MMC also argues that front-pay evidence should not have been admitted because Mr. Gomez was an at-will employee who had no continuing right to employment with MMC. The jury rejected MMC's contention that Mr. Gomez was an at-will employee, and we have concluded that the record supports the jury's determination. Accordingly, this argument is without merit
 
 
 [3]
 We note that Mr. Gomez' expert opined he was entitled to $498,000 in front pay. The jury awarded $81,297.00
 
 
 [4]
 The discovery rulings at issue concern Mr. Gomez' Title VII and ADEA claims. See Aplee.App. at 199. While the damages which Mr. Gomez could recover on these claims would be duplicative of the damages he received on his state law claim, we nonetheless consider these arguments because Mr. Gomez would be entitled to an award of attorneys' fees if he were to prevail on his discrimination claims