**Filed 4/11/96**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

PATSY RYAN,

        Plaintiff - Appellant,

        v.

EQUITY BANK FOR SAVINGS, a
Federally Chartered Savings and Loan,

        Defendant - Appellee.

No. 95-6096

W.D. Oklahoma

(D.C. No. CIV-94-582-L)

## ORDER AND JUDGMENT[*]

Before **ANDERSON**, **BALDOCK**, and **BRORBY**, Circuit Judges.

     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

     [*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Patsy Ryan brought this action against Equity Bank for Savings ("Equity"), alleging a violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1); and unlawful discrimination on the basis of gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. The case went to trial before a jury. Following the conclusion of Ryan's case in chief, the district court granted Equity's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. Ryan appeals from that adverse judgment, contending that the court erred by 1) weighing the evidence, thereby usurping the jury's proper function, and 2) applying the wrong legal standard. For the reasons set forth below, we affirm as to claims under the EPA and Title VII, reverse as to claims under the ADEA, and remand for a new trial.

**BACKGROUND**

On December 30, 1991, Ryan, a fifty-three year old female with fifteen years' experience in banking, began working for Equity as a savings counselor at an hourly wage which annualized to $16,200. In late April 1992, she was promoted to the position of branch manager and moved to the Tower branch. Her annual compensation remained at $16,200, although her new position was treated as "salaried" rather than "hourly."

Approximately two and a half months before hiring Ryan, Equity hired Terry Johnson as a management trainee, starting as a savings counselor at an annualized hourly

wage of $15,600. Johnson was a twenty-six year old male with a college degree in finance. He had worked as a teller and systems operator at another local bank during the previous two years while he attended college. In May 1992, Equity promoted Johnson to assistant manager of the Tower branch, and raised his pay to the annualized sum of $16,800, computed on an hourly, rather than a salaried, basis. Thus, although Johnson was under Ryan's supervision when Ryan became branch manager at the Tower location, Johnson's base compensation was $600 a year more than Ryan's. Additionally, because assistant managers were hourly employees, Johnson received time and a half for overtime work as a Saturday teller.

In December 1992, Equity transferred Ryan to the North branch as branch manager where she continued to receive the same pay. The office traffic was greater at the Tower branch, but the North branch operation hours were longer, and there was more responsibility entailed in managing a drive up teller service which the Tower branch did not have. Appellant's App. Vol. II at 416, 456, 591. Additionally, Ryan supervised more employees at the North Branch, including some who had irregular schedules because of school classes and some whom she was required to loan to other branches from time to time. Id. at 456, 586.

When Ryan moved to the North Branch, Equity promoted Johnson to branch manager at the Tower branch. Even though the position was salaried, Johnson was allowed to continue working overtime at time and a half, until raises were given five

- 3 -

months later. By contrast, once Ryan became branch manager, she was informed that she would receive only a straight hourly wage for any overtime.[1]

In late April and early May 1993, all branch managers were given written evaluations. In May 1993, Ryan received a raise of $800, and Johnson received a raise of $1,800, even though they had received equivalent overall ratings on their written performance evaluations. Following the raise, Ryan filed a complaint with the EEOC. Although there had been no prior documentation of any performance concern, following her complaint, Equity administrators placed several negative assessments and memoranda in Ryan's personnel file.

According to Equity's employment manual, employees are promoted to positions such as branch manager based on merit. During the period from April 1992 through May 1993, there were eight branch managers in comparable positions, including Ryan and Johnson.[2] Except for Johnson, all were female and none had a college degree.

During 1992, three of the managers had considerable seniority in their positions, having been branch managers since at least December 1988, and having worked for Equity's predecessor. Of this group with considerable seniority, two managers were over

---

[1]Although there was testimony that one other branch manager worked overtime, Equity's pleadings indicate that her overtime pay would have been straight hourly. Defendant's Motion for Summary Judgment, Appellant's App. Vol. I at 24, 122-23.

[2]In Exhibit 20, Appellant's App. Vol. I at 373, Equity compiled data for branch managers at seven of fifteen branches which were under a common administrator. See also Appellant's App. Vol. II at 415. According to the administrator, data was provided only for those branches which were comparable to Ryan's. Id. at 561.

forty years of age (forty-six and forty-three), and one was thirty-five. The thirty-five year old manager received the highest salary, and the forty-six year old manager received the lowest salary.[3]

Five people, including Ryan and Johnson, became branch managers during 1992 and 1993. Three of these newly promoted bank managers were over forty. Ryan, who become a manager in April 1992, was fifty-four. Five months later, a forty-six year old female became a branch manager, and, in March 1993, a forty-one year old female became the last member of the new group of bank managers. The highest paid member of the new group was a thirty-two year old woman who became a branch manager in September 1992, and Johnson, who became a manager in January 1993, when he was twenty-seven, was the second highest paid. Following the 1993 raises, Ryan, who was

---

[3]In July 1992, the forty-three year old manager was transferred or promoted to a different position. Apparently, there was no salary increase at the time of her change. Compare Ex. 20, Appellant's App. Vol. I at 373 with Equity's document production, id. at 68.

Equity's Exhibit 20 contains data for another female manager, who had considerable seniority, and was fifty-three years old, although she had been previously promoted or transferred to a different position in October 1991. In any event, her stated salary was also less than the salary of the thirty-five year old manager with considerable seniority. Appellant's App. Vol. I at 68, 373. See also Appellant's App. Vol. II at 635.

the oldest, received the lowest compensation of all eight managers.[4]  In October 1993,

Johnson was transferred to the loan department.


**DISCUSSION**

We review de novo a district court's ruling on a motion for judgment as a matter of

law.  Brown v. Wal-Mart Stores, 11 F.3d 1559, 1563 (10th Cir. 1993).  Applying the

same legal standard as the district court, we construe the evidence and inferences most

favorably to the nonmoving party, without weighing the evidence, passing on the

credibility of witnesses, or substituting our judgment for that of the jury.  Id.  Thus, unless

the evidence points all one way, a directed verdict is inappropriate.  Martin v. Unit Rig &

Equip. Co., 715 F.2d 1434, 1438 (10th Cir. 1983).  However, because our analysis is

necessarily "frame[d] . . . in terms of the underlying burden of proof," Rajala v. Allied

Corp., 919 F.2d 610, 615 (10th Cir. 1990), cert. denied, 500 U.S. 905 (1991), a "mere

scintilla of evidence is insufficient to create a jury question." Honce v. Vigil, 1 F.3d

---

[4]Additionally, we note that following the 1993 raises, both of the substantially younger new managers received greater salaries than the remaining manager with considerable seniority who was then forty-seven.  While this observation does not take into account the salaries of the two branch managers with seniority who were previously transferred, see supra note 3, we also note that those transfers entailed changes in duties, and the lack of comparable data for the new positions precludes any conclusive determinations about disparate treatment regarding them.  In any event, Equity has consistently asserted that comparisons should be limited to persons performing equal duties as branch managers.  See Defendant's Brief in Support of Motion for an Order in Limine, Appellant's App. Vol. I at 208-09; see also Appellant's App. Vol. II at 551, 561.

1085, 1088 (10th Cir. 1993) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

Although an employment discrimination case may be proved by either direct or indirect evidence, in practice plaintiffs generally offer only circumstantial proof because "there is rarely direct evidence of discrimination." Ingels v. Thiokol Corp., 42 F.3d 616, 621 (10th Cir. 1994). If circumstantial evidence is used, we apply the burden shifting procedures set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Id. Under McDonnell, a plaintiff must first establish a prima facie case that the employer engaged in the discriminatory practices. Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant who can rebut the presumption created by the prima facie case by asserting a "legitimate, nondiscriminatory reason for the employee's [treatment]." Ingels, 42 F.3d at 621.

Then, the prima facie presumption having been dispelled, the plaintiff must present evidence "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual -- i.e. unworthy of belief." See Randle, 69 F.3d at 451. Thus, in order to survive a motion for judgment as a matter of law, the plaintiff must present evidence from which, viewed in the light most favorable to the plaintiff, the fact finder could infer unlawful, discriminatory motive. Id.

A. The Title VII and EPA claims.

To establish a prima facie case of unlawful wage discrimination under Title VII and the EPA, Ryan offered her testimony that she was satisfactorily performing her work, and that Equity paid more for the same (or lesser) work when it was performed by males in similar conditions and circumstances. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n.13 (1973); see also Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974); Nulf v. International Paper Co., 656 F.2d 553, 560 (10th Cir. 1981) (noting that equal pay for equal work concept applies to Title VII in the same way it applies to the EPA).

In making its motion for judgment as a matter of law under Rule 50, Equity relied on the testimony of an Equity administrator whom Ryan called as her first witness. Asserting that the raises and salary decisions were based on merit and performance, the administrator also testified regarding the salaries of other comparable female branch managers. In its order, the district court found that Ryan had presented no evidence to dispute the credibility of that justification, and that, moreover, Equity's treatment of other women indicated that there was "no pattern . . . that salaries or raises were based on . . . gender." Appellant's Br., Ex. A at 5.

We agree with the district court. Ryan presented no evidence to create a jury question in light of the clearly established fact that the highest paid member of the new group of branch managers was a woman. Nonetheless, Ryan disputes the validity of this

fact, arguing as her second claim of error that any consideration of such data impermissibly converts her case into a disparate impact claim, when, in fact, her claim is one of disparate treatment.[5]

"It is well settled that in a Title VII suit, an employer's general practices are relevant even when a plaintiff is asserting an individual claim for disparate treatment." Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995). Thus, "isolated incidents or random comparisons demonstrating disparities in treatment may be insufficient to draw [an] inference of discrimination without additional evidence that the alleged phenomenon of inequality also exists with respect to the entire relevant group of employees." Houck v. Virginia Polytechnic Inst. and State Univ., 10 F.3d 204, 206 (4th Cir. 1993) (requiring a showing of disparity across the relevant group even at the level of the prima facie case).

Although Equity presented a facially nondiscriminatory reason for its actions and thereby dispelled the presumption arising from Ryan's prima facie case, in effect, Ryan seeks to equate her prima facie case with the elements required to create a jury question. However, to go to the jury on her Title VII claim, Ryan was required to produce evidence

---

[5]In a case of disparate treatment, an "'employer simply treats some people less favorably than others because of their race, color, religion [or other protected characteristics.]'" Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993) (quoting Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977)). By contrast, a disparate impact claim involves "'employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'" Id.

of pretext from which the fact finder could infer the requisite unlawful motive.  Likewise, although proof of intentional gender discrimination is not required under the EPA, see Brownlee v. Gay & Taylor, Inc., 861 F.2d 1222, 1224 (10th Cir. 1988), Ryan was still required to present more than a scintilla of contrary evidence in response to Equity's showing that its decisions were not gender based.  This she failed to do.  Accordingly, all the inferences point one way, and the district court correctly granted judgment on the law in Equity's favor.

    B.  The ADEA claim.

    Under the ADEA, a plaintiff "need not prove that age was the sole reason for the employer's acts, but must show that age 'made the difference' in the employer's decision."  EEOC v. Sperry Corp., 852 F.2d 503, 507 (10th Cir. 1988) (quoting EEOC v. Prudential Fed. Sav. & Loan Ass'n, 763 F.2d 1166, 1170 (10th Cir.), cert. denied, 474 U.S. 946 (1985)).  As with her other claims, Ryan presented her prima facie case, showing that she was paid less than substantially younger branch managers, including Johnson.[6]

---

    [6]See O'Connor v. Consolidated Coin Caterers Corp., No. 95-354, 1996 WL 142564, at ___ (U.S. Apr. 1, 1996) ("We have never had occasion to decide whether that application of the [McDonnell Dougless framework] to the ADEA context is correct, but since the parties do not contest that point, we shall assume it.").

Thereupon, Equity asserted its nondiscriminatory motive. Specifically, Equity urged its special treatment of Johnson was due to various merit factors, including his college degree. Ryan countered with evidence that a college degree was not required for the position, and showed that none of the other branch managers, including the highest paid younger woman, had a college degree.[7] Equity also emphasized Ryan's self-evaluation which noted difficulty in switching over to the new computer system. However, the testimony of Equity's administrator, that everyone was having difficulties with the computer during that time frame, tempers Ryan's self-criticism.[8] Appellant's App. Vol. II at 575. Moreover, the performance evaluation on Johnson also indicated areas for improvement and a need for guidance, and the overall ratings on the two evaluations were similar.[9]

---

[7]Moreover, Equity's reliance on Johnson's college degree is undercut by the fact that his initial salary of $15,600 was the same as that offered to other new savings counselors without college degrees who possessed no banking experience. Appellant's App. Vol. II at 638. By contrast, it is possible to infer that experience, rather than education, was the reason that Equity set Ryan's initial salary as a savings counselor at $16,200. See id. at 637-38.

[8]In any event, Equity's administrator testified that the written evaluations were not reviewed by the committee when it made its decisions on salaries. Appellant's App. Vol. II at 503.

[9]Two areas on Ryan's evaluation were not filled out, because the administrator had just come on the job when the evaluations were due, and she had no personal knowledge of Ryan's performance in those areas. However, there was no indication that the omission represented any adverse assessment.

Most critical to the ADEA claim, however, is the evidence that, without exception, branch managers over forty were paid less than substantially younger branch managers with similar seniority in the position.

Under the standards for Rule 50 motions, all inferences must be drawn in favor of Ryan. Because Equity paid women who had considerable seniority and who were over forty more than it paid Johnson during some of the relevant period, the district court concluded that Ryan had failed to create a jury question regarding age discrimination. However, according to the evidence, Equity classified the group of higher-paid protected women with considerable seniority at a significantly higher level than Johnson, based on experience and concomitant detailed knowledge of specialized Equity operations. Appellant's App. Vol. I at 323-24. Therefore, the jury could have agreed with Ryan's argument that any comparison should take seniority into account, thereby distinguishing the new group of branch managers from the group with seniority. Likewise, taking into account the evidence that in each group, those who were over forty were paid less than substantially younger managers, the jury could have inferred that Johnson's preferential treatment, despite his inexperience and need for guidance, belied Equity's professed nondiscriminatory motives.[10]

---

[10]In O'Connor, the Supreme Court made it clear that an ADEA violation can occur even among members of the protected class: "The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age." O'Connor, 1996 WL 142564, at ___ (addressing the
(continued...)

Certainly, isolated incidents or random comparisons may be insufficient to draw an inference of discrimination.  See Houck, 10 F.3d at 206-07.  However in some situations, unlawful motive may "'be inferred from the mere fact of differences in treatment,'" Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993) (quoting Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977)), and "[a] factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, ___, 113 S. Ct. 2742, 2749 (1993).  At the very least, evidence that the alleged inequality exists among the entire relevant group of employees, together with other inconsistencies of the type which Ryan pointed out, creates an issue of material fact as to whether the employer's stated motives are "unworthy of belief."  See Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).

Taking every inference in Ryan's favor, we conclude that Ryan produced sufficient evidence to create a jury question with regard to her claim under the ADEA, and that a reasonable jury could have concluded that Equity's stated reasons were not to

---

[10](...continued)
situation in which a fifty-six year-old was replaced by a forty year-old).  Thus, the fact that Ryan was the lowest paid of all managers following the 1993 raises, and that the other managers were significantly younger than she, may also be probative of Equity's motives.

be believed, but, rather, that age was a determining factor in its wage decisions. Therefore the court erred in granting judgment as a matter of law on the ADEA claim.

For the reasons stated, the judgment of the district court is AFFIRMED IN PART and REVERSED IN PART, and we REMAND for a new trial on the ADEA claim.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge