**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**MAY 29 2001**

**TENTH CIRCUIT**

_____

**PATRICK FISHER**
**Clerk**

GARY P. GALLETTA,

      Plaintiff-Appellant,

v.

BRIAN W. DEASY,

      Defendant-Appellee.

No. 00-1236
(D. Colo.)
(D.Ct. No. 96-D-1463)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **SEYMOUR**, **McKAY**, and **BRORBY**, Circuit Judges.

_____


    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.


    In this 42 U.S.C. § 1983 action, plaintiff Gary Galletta claims defendant

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Denver Police Sergeant Brian Deasy illegally searched and utilized excessive force in arresting him for interference with a police officer, speeding, and no proof of insurance following a traffic stop for speeding. The district court granted Sergeant Deasy's motion for summary judgment on qualified immunity grounds as to the illegal search claim. Following trial, the jury found Sergeant Deasy had not used excessive force in arresting Mr. Galletta. On appeal, Mr. Galletta argues the district court erred in granting Sergeant Deasy's summary judgment motion and in sustaining an objection to a question posed by Mr. Galletta's counsel to Sergeant Deasy during the trial. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I. Background

The material facts necessary to resolve this appeal are undisputed. Sergeant Deasy stopped Mr. Galletta for speeding and asked him to produce his driver's license, registration, and proof of insurance. Mr. Galletta opened his wallet in front of Sergeant Deasy, which allowed Sergeant Deasy to observe two driver's licenses in the wallet. After Mr. Galletta gave him one of the licenses, Sergeant Deasy requested the other. Mr. Galletta denied having a second driver's license, at which point Sergeant Deasy ordered him to produce it. When Mr. Galletta refused, Sergeant Deasy arrested him for interference with a police

officer, speeding, and no proof of insurance.  Sergeant Deasy seized and searched

Mr. Galletta's wallet incident to the arrest, and found the second license was a

duplicate issued to Mr. Galletta.

II.  Procedural History

In support of his summary judgment motion, Sergeant Deasy claimed

qualified immunity from suit, because he:  (1) reasonably believed there existed

probable cause to arrest Mr. Galletta for interference with a police officer, which

gave him the right to subsequently search Mr. Galletta's wallet incident to the

arrest; and (2) properly seized the second license under the plain view exception

to the warrant requirement.  In response, Mr. Galletta challenged the existence of

probable cause to arrest, because he allegedly:  (1) complied with Colorado

Revised Statutes § 42-2-113(1) by handing over his original driver's license upon

Sergeant Deasy's request for it, and (2) did not disobey a "lawful order" – an

element of the crime of interference – from Sergeant Deasy, because Sergeant

Deasy "had no particularized knowledge in this case which would make it more

probable than not that the document seen in [Mr. Galletta]'s wallet was a forged

or false identification."

The district court found "Deasy was reasonable in believing that by

refusing to surrender the second driver's license, Galletta was committing a misdemeanor in violation of C.R.S. § 42-2-115, which requires a licensed driver to turn over his or her driver's license, and C.R.S. § 42-4-107, which requires obedience to police officers." [1] (Footonote omitted.) Accordingly, the court held Sergeant Deasy had probable cause to arrest Mr. Galletta for failure to comply with a lawful order of a police officer, and the subsequent search of Mr. Galletta's wallet was justified under the search incident to arrest exception to the warrant requirement. The court concluded: "Since Galletta has not met his

---

[1] This order and judgment departs from the district court's statutory citations in two ways, neither of which affects the substance of the district court's holding, Mr. Galletta's issues on appeal, or our resolution of those issues. First, as the district court noted, the Colorado law requiring a licensed driver to turn over his or her driver's license to a police officer upon request at a valid traffic stop was codified as Colo. Rev. Stat. § 42-2-113(1) at the time of Mr. Galletta's arrest. Accordingly, we refer to the language of § 42-2-113(1), even though the statute has since been reenacted "in substantially similar language" under § 42-2-115(1). *People v. Rodriguez*, 945 P.2d 1351, 1359 n.5 (Colo. 1997) (en banc); *see infra* Part IV.A. Second, as supported by the record, we recognize Sergeant Deasy arrested Mr. Galletta pursuant to Denver Revised Municipal Code § 38-31(c), not Colo. Rev. Stat. § 42-4-107. *See infra* Part IV.A. However, this is immaterial to the district court's holding and this appeal, because: (1) both the municipal code and state statute criminalize a person's failure to obey a police officer's lawful order; and (2) Mr. Galletta's memorandum in opposition to Sergeant Deasy's summary judgment motion and his first issue on appeal ultimately focus on the lawfulness of Sergeant Deasy's order to produce the second license, not Sergeant Deasy's authority to effect a custodial arrest for a person's failure to obey a lawful order. *See* Denver Rev. Mun. Code § 38-31(c) ("It shall be unlawful for any person to fail to obey a lawful order of a police officer if such failure interferes with or hinders such police officer in the discharge of his official duties."); Colo. Rev. Stat. § 42-4-107 ("No person shall willfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control, or regulate traffic.").

burden of showing that Deasy violated his clearly established right to be free from illegal search and arrest, Deasy must prevail on his affirmative defense of qualified immunity."

Mr. Galletta's excessive force claim was subsequently tried to a jury. On completion of a two-day trial, the jury concluded Sergeant Deasy had not used excessive force in arresting Mr. Galletta.

Mr. Galletta raises two issues on appeal. First, he claims summary judgment for Sergeant Deasy on qualified immunity grounds was inappropriate because there was no probable cause to arrest and the plain view exception to the warrant requirement cannot be used to justify the search of his wallet. Second, he claims the district court erred during the trial by sustaining a relevancy objection to a question posed by his counsel to Sergeant Deasy that allegedly used "the word search with reference to the order to produce the license." [2]

---

[2] Mr. Galletta's opening brief also includes the following sentence in the "Summary of Argument" section: "[T]he jury, which found against the plaintiff on the excessive force claim was improperly instructed on whether there was the right to employ *any* force." (Emphasis in original.) However, Mr. Galletta does not present it as an issue for review, submit any argument, cite relevant case law, or provide a record citation to his objection to the jury instruction and the district court's subsequent ruling on it. *See* Fed. R. App. P. 28(a)(5), (9); Tenth Cir. R. 28.2(C)(3)(b). Therefore, we decline to consider the merits of this claim due to Mr. Galletta's failure to adequately brief it on appeal. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995) (citing cases).

III.  Standard of Review

A.  Qualified Immunity Defense at Summary Judgment

"[Section] 1983 allow[s] a plaintiff to seek money damages from government officials who have violated his Fourth Amendment rights." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).  However, under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This doctrine is designed to "ensure that erroneous suits do not even go to trial." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (quotation marks and citations omitted).

We review the grant of qualified immunity on summary judgment de novo, and view the evidence in the light most favorable to the non-moving party. *See Davis v. Gracey*, 111 F.3d 1472, 1478 (10th Cir. 1997).

> When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test.  "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue."

*Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (quoting *Albright*, 51 F.3d at 1534-35). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment – showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Nelson*, 207 F.3d at 1206 (quotation marks and citation omitted).

However, the plaintiff does not meet his burden by identifying "in the abstract" a clearly established constitutional right and claiming the defendant violated it. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988). "Rather, the plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity, and demonstrate a substantial correspondence between the conduct in question and prior law ... establishing that the defendant's actions were clearly prohibited." *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995) (alterations, quotation marks and citations omitted). "Unless such a showing is made, the defendant prevails," *Losavio*, 847 F.2d at 646, and "we need not

address the other elements of the qualified immunity inquiry." *Davis*, 111 F.3d at 1478.

B. Evidentiary Rulings at Trial

We review the district court's determination of whether evidence is relevant for a clear abuse of discretion. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1518 (10th Cir. 1995). "Under this deferential standard of review, a trial court will be reversed only if we have a firm and definite belief that the trial court made a clear error in judgment." *See Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1433 (10th Cir. 1993). Moreover, error in the exclusion of evidence is harmless unless the party asserting error demonstrates the substantial rights of the parties were affected. *See Gomez*, 50 F.3d at 1518.

IV. Discussion

A. Qualified Immunity and the Illegal Search Claim

Mr. Galletta argues the warrantless search of his wallet violated his Fourth Amendment rights because Sergeant Deasy did not have probable cause to arrest him, thereby invalidating the search incident to arrest exception to the warrant requirement, and the plain view exception to the warrant requirement does not save the search. However, Mr. Galletta does not challenge the validity or

constitutionality of: (1) the traffic stop; (2) Sergeant Deasy's initial order to produce his driver's license, registration, and proof of insurance; (3) Sergeant Deasy's observation of two driver's licenses in his wallet; (4) Sergeant Deasy's authority to effect a custodial arrest for interference with a police officer; or (5) the search for and seizure of the second license if it followed a lawful arrest for interference. "The constitutional validity of the search in this case, then, must depend upon the constitutional validity of the petitioner's arrest." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see United States v. Robinson*, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a *lawful* arrest is a traditional exception to the warrant requirement of the Fourth Amendment." (Emphasis added.)). Because we conclude Mr. Galletta failed to establish that Sergeant Deasy arrested him without probable cause, we affirm the district court's qualified immunity ruling in favor of Sergeant Deasy. [3]

"A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime." *Romero*, 45 F.3d at 1476. Probable cause existed if, at the moment the arrest was made, "facts and circumstances within the arresting officer's knowledge and of which he or she

---

[3] In light of our resolution of this question, we need not address Mr. Galletta's claim the plain view exception to the warrant requirement does not apply in this case.

has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Jones v. City & County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988). In addition, "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986)). "When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." *Romero*, 45 F.3d at 1476 (quoting *Hunter*, 502 U.S. at 228). In other words, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter*, 502 U.S. at 227 (quoting *Anderson*, 483 U.S. at 641).

Applying these principles to this case, Mr. Galletta was required to establish: (1) Sergeant Deasy's observation of and request for the second license in Mr. Galletta's wallet, and Mr. Galletta's response that he did not have a second license, are insufficient to lead a prudent police officer to conclude Mr.

-10-

Galletta was violating Colo. Rev. Stat. § 42-2-113(1);[4] (2) in such a situation, an officer does not have the right to order a person to comply with § 42-2-113(1); or (3) Mr. Galletta's refusal to obey Sergeant Deasy's order to produce the second license is insufficient to lead a prudent police officer to conclude Mr. Galletta was violating Denver Rev. Mun. Code § 38-31(c).[5] *See Romero*, 45 F.3d at 1476 & n.1. We conclude Mr. Galletta fails to establish any of the three points.[6]

---

[4] In Colorado:

> No person who has been issued a driver's ... license ... who operates a motor vehicle in this state, and who has such license ... in such person's immediate possession shall refuse to remove such license ... from any billfold ... or other container and to hand the same to any peace officer who has requested such person to do so if such peace officer reasonably suspects that such person is committing, has committed, or is about to commit a violation of article 2, 3, 4, 5, 6, 7, or 8 of this title.

Colo. Rev. Stat. § 42-2-113(1) (1993); *see Rodriguez*, 945 P.2d at 1359-60 (recognizing the applicability of § 42-2-113(1) to traffic offenses).

[5] In Denver, Colorado, a person is guilty of interference with police authority when he or she "fail[s] to obey a lawful order of a police officer if such failure interferes with or hinders such police officer in the discharge of his official duties." Denver Rev. Mun. Code § 38-31(c).

[6] If Mr. Galletta had succeeded in establishing any of these three points, we would then evaluate whether a reasonable officer could have believed probable cause existed to arrest Mr. Galletta. *See Romero*, 45 F.3d at 1476; *Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991).

First, Mr. Galletta does not appeal the district court's ruling that Sergeant Deasy had probable cause to believe Mr. Galletta was violating § 42-2-113(1) when he refused to produce the second license, and we deem this issue waived. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) ("[A]ppellant failed to raise this issue in his opening brief and, hence, has waived the point."). [7] Accordingly, we conclude Mr. Galletta failed to present any evidence or legal argument to support a claim that Sergeant Deasy lacked probable cause to believe Mr. Galletta was violating § 42-2-113(1).

Second, Mr. Galletta fails to address whether § 42-2-113(1) authorizes an officer to order the production of a driver's license under the facts of this case. Instead, he argues "the order was to comply with an unlawful search and thus could not have formed the basis for an arrest." Specifically, he claims Sergeant Deasy did not have probable cause to believe the second license was an instrument of crime, because "he had no particularized knowledge in this case which would make it more probable than not that the document seen in [Mr. Galletta]'s wallet was a forged or false identification." However, we do not see

---

[7] Even if Mr. Galletta had raised this issue on appeal, we note the second driver's license appears to fall well within the parameters of § 42-2-113(1): it was a driver's license issued to Mr. Galletta and was in his immediate possession at the time Sergeant Deasy requested it. *See supra* note 4.

any "instrument of crime" or "forged or false identification" requirement in § 42-2-113(1), and Mr. Galletta does not point us to any such language or Colorado case law presenting this interpretation. His reference to Colo. Rev. Stat. § 42-2-136, which bans possession of an altered or false driver's license, is immaterial to the scope of § 42-2-113(1) and we need not discuss it further.

In this case, Sergeant Deasy validly stopped Mr. Galletta for speeding and lawfully observed a second driver's license in Mr. Galletta's wallet. Addressing valid traffic stops, § 42-2-113(1) utilizes mandatory language: "No person ... shall refuse to remove such license ... from any billfold ... or other container and to hand the same to any peace officer who has requested such person to do so." Colo. Rev. Stat. § 42-2-113(1). As the Supreme Court of Colorado has stated: "This statute provides that police officials may *demand* production of identifying *documents* from motorists only if such demand is justified by a reasonable suspicion of a violation of the motor vehicle law." *People v. Redinger*, 906 P.2d 81, 86 n.4 (Colo. 1995) (en banc) (emphasis added). Accordingly, we conclude Mr. Galletta has failed to present any evidence or legal argument to establish that Sergeant Deasy lacked authority to order compliance with § 42-2-113(1).

Even if we assumed, *arguendo*, that § 42-2-113(1) does not authorize a

police officer to order compliance with it, Sergeant Deasy "nevertheless would be entitled to qualified immunity because [his] decision was reasonable, even if mistaken." *Hunter*, 502 U.S. at 229. This is based primarily on the statute's mandatory language and the Supreme Court of Colorado's description of it in *Redinger*. In addition, although Sergeant Deasy's subjective belief is not controlling in a qualified immunity analysis, we note both Mr. Galletta's counsel and the state trial judge acknowledged – during a state court motions hearing involving the criminal charges against Mr. Galletta [8] – Sergeant Deasy's extensive experience with Colorado motor vehicle law as a twenty-four-year veteran of the Denver Police Department at the time of this incident. Thus, Sergeant Deasy's perspective on § 42-2-113(1) sheds light on what a reasonable officer could believe. As he testified under oath at the hearing, Sergeant Deasy certainly believed § 42-2-113(1) gives an officer the right to order a person to comply with the statute:

> A. ... According to the statute that I read of 42-2-113, that he had another driver's license, he had to surrender it to me, and he refused.
>
> ...
>
> Q. And are you relying upon any provision of Colorado law that makes it unlawful for [Mr. Galletta] to have a duplicate of his

---

[8] According to Mr. Galletta, these charges were dismissed prior to trial.

-14-

Colorado driver's license in his possession?

A. I didn't – I didn't say that, sir. You're saying that, not me.

Q. Well, you demanded that he surrender something to you that you already had the original of. Correct?

A. Sir, that's – that's not the way I understand the statute. If you read 42-2-113, it says if he has a driver's license, he has to surrender it to me. He surrendered one driver's license. As you can see, the reasonable suspicion of a police officer out on the street, when you deal with someone, it was not – not feasible to me why, if someone had another license or another I.D., why he wouldn't show it to me.

Finally, we note Mr. Galletta does not argue a reasonable police officer could not have believed § 42-2-113(1) gives him the right to order a person to comply with the statute. Accordingly, we conclude a reasonable officer could believe § 42-2-113(1) gives him the right during a valid traffic stop to order compliance with the statute when he lawfully gains knowledge of the existence of a second license in the driver's possession.

Third, Mr. Galletta does not dispute he failed to obey Sergeant Deasy's order to produce the second license. Instead, Mr. Galletta argues Sergeant Deasy did not have probable cause to arrest, because Sergeant Deasy could only conclude there was "a possibility that [the second license] was present for an unlawful purpose." Specifically, he claims Sergeant Deasy "had no information that [the second license] had in any way been altered" as required by Colorado

-15-

law banning the possession of an altered or false driver's license.        *See* Colo. Rev. Stat. § 42-2-136(1).  Quite simply, this argument fails because Mr. Galletta was arrested for interference with police authority pursuant to Denver Rev. Mun. Code § 38-31(c), not for possession of an altered driver's license.  Accordingly, we conclude Mr. Galletta failed to present any evidence or legal argument to support a claim that Sergeant Deasy lacked probable cause to arrest Mr. Galletta for a violation of § 38-31(c).

We conclude Mr. Galletta has failed to establish Sergeant Deasy arrested him without probable cause, which means the subsequent search of Mr. Galletta's wallet did not violate the Fourth Amendment.  Sergeant Deasy is therefore entitled to qualified immunity as a matter of law. [9]

---

[9] Although briefed by neither party, we note a recent Tenth Circuit case in which this court concluded that during a lawful investigative detention:  (1) a police officer may lawfully order the detainee to produce identification, and (2) the detainee does not have a clearly established constitutional right to refuse to present identification.  *See Oliver v. Woods*, 209 F.3d 1179, 1189-90 (10th Cir. 2000).  For these and other reasons, we held the police officer defendants in *Oliver* were entitled to qualified immunity from Mr. Oliver's § 1983 action alleging violations of his Fourth Amendment rights.  *See id.* at 1184-91.  However, *Oliver* does not control our resolution of this appeal because it is factually and legally distinguishable.  First, unlike Mr. Oliver, Mr. Galletta produced a driver's license upon Sergeant Deasy's initial request for one, and *Oliver* does not address the lawfulness of an officer's order to produce further identification.  *See id.* at 1182-83, 1189; *supra* Part I.  Second, *Oliver* did not address the implications of a mandatory license production statute such as § 42-2-113(1).  *See Oliver*, 209 F.3d at 1188-89.

B. Evidentiary Ruling at Trial

Mr. Galletta claims the district court erred during the trial by sustaining a relevancy objection to a question posed by his counsel to Sergeant Deasy, which allegedly used "the word search with reference to the order to produce the license." In support, Mr. Galletta quotes the following exchange from the trial transcript:

> Q. Now, Sergeant, you said you'd never had anyone refuse to produce something before?
>
> A. I've never had someone where I saw two driver's licenses – and it's not that unusual an occurrence – where they refused to deliver the other one to me.
>
> Q. But you have had people decline your request for searches, correct?
>
> A. For searches?
>
> Q. Yeah.
>
> MR. HALABY: Objection. There's no search involved here.
>
> THE COURT: Sustained. It's not relevant.

Accordingly, we will focus on the actual question at issue – "But you have had people decline your request for searches, correct?" – and not Mr. Galletta's characterization of it.

We conclude the district court did not abuse its discretion by sustaining

the objection to this question on relevancy grounds. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In light of the summary judgment ruling on Mr. Galletta's illegal search claim, the only issue at trial was whether Sergeant Deasy utilized excessive force in arresting Mr. Galletta after Mr. Galletta failed to obey the order to produce the second license. Quite simply, Sergeant Deasy's order was not a request for consent to search, which means the question had nothing to do with the issue in the trial. Because "[e]vidence which is not relevant is not admissible," the district court did not abuse its discretion by sustaining the objection to the question. Fed. R. Evid. 402. Further, we cannot say Mr. Galletta has shown that the exclusion of this evidence, even if erroneous, affected his substantial rights. *See Gomez*, 50 F.3d at 1518.

V. Conclusion

The judgment of the United States District Court for the District of Colorado is **AFFIRMED**.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

-18-