**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 31 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LEWIS TURCK,

      Plaintiff - Appellee,

    v.

BAKER PETROLITE
CORPORATION, a Bakers Hughes
company,

      Defendant - Appellant.

No. 00-5082

(N.D. Oklahoma)

(D.C. No. CV-99-168-C)

**ORDER AND JUDGMENT** *

Before **EBEL** , **ANDERSON** , and **MURPHY** , Circuit Judges.

Baker Petrolite Corporation ("Baker") appeals a judgment entered against it

following a jury verdict in favor of Appellee, Lewis Turck, in his lawsuit for

alleged wrongful retaliatory discharge under Oklahoma law. The jury found that

Turck's termination was significantly motivated by and in retaliation for his

attempt to consult his workers' compensation attorney during his pending

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

workers' compensation action in violation of OKLA. STAT. tit. 85, § 5(A)(2).

Baker contends that the judgment should be reversed for the following reasons:

(1) the district court erred in finding that the cause of action upon which Turck

prevailed was properly pled; (2) the district court abused its discretion by denying

Baker's requests for a continuance because Baker needed more time to prepare a

defense against a claim of which it allegedly had been unaware during discovery;

(3) the district court abused its discretion by failing to enter a revised pretrial

order; (4) the district court erred as a matter of law in its interpretation of OKLA.

STAT. tit. 85, § 5(A)(2) and erroneously instructed the jury thereon; (5) the

district court abused its discretion by excluding evidence of Turck's past

behavior, job performance and workers' compensation claims; (6) the district

court abused its discretion by admitting the testimony of Turck's expert witness;

and (7) the district court erred in denying Baker's motion for judgment as a matter

of law because the evidence did not support the jury's verdict.  We exercise

jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

Turck worked for Baker and its predecessors for over seventeen years,

although he apparently was not a model employee.  According to Baker, Turck's

employment history included the following:  Turck was given a verbal warning

-2-

for using the company phone for personal calls in April of 1988. Appellant's App. at 561. On July 11, 1988, he was suspended without pay for two weeks for insubordination. Id. at 565. In January 1989, Turck agreed to work late, but then left without permission. As a result of that incident, termination was recommended, but did not occur. Id. at 569. On December 7, 1989, Turck received a warning letter informing him that a female employee had complained that he had sexually harassed her and giving him various instructions designed to prevent any unnecessary contact between him and the complainant. He violated those instructions on January 21, 1990, and was suspended for four days without pay. Id. at 627. On April 6, 1990, Turck was cited for negligence in performing his job duties and warned that further incidents could result in termination. Id. at 570-71.

In August 1990, Turck suffered a work related back injury. He retained counsel and filed a workers' compensation lawsuit on July 20, 1992. Id. at 528. Despite Turck's past disciplinary problems, he received a positive performance review in 1993. However, his performance review dated September 19, 1994, while mostly positive, stated that Turck "needs to improve on his teamwork as well as his infectious negative attitude. Lewis needs to build trust and integrity with management and to accept management decisions." Id. at 593.

In November 1994, Turck re-injured his back while working on a rail car. He retained counsel and filed a second workers' compensation lawsuit against Baker on December 19, 1994. Id. at 542. In May 1995, Turck suffered another work related back injury. Again represented by counsel, he filed his third workers' compensation lawsuit against Baker on May 25, 1995. Id. at 550. Turck's August 15, 1995, performance review rated him "unsatisfactory" in the areas of cooperation and attendance and again discussed his negative attitude and rude behavior towards other employees, his supervisors and Baker. Id. at 598-603. Turck was given another review on April 4, 1996, in which he was given scores of "unsatisfactory" and "needs improvement" in several categories. Id. at 606-08.

In June 1996, Turck injured his right knee on the job. However, he continued to work until July 2, 1996, when Baker sent him home from work because it did not think he should be working with the injury. Before he left work on July 2, Turck had, as per company policy, filled out his time sheet for the next two weeks and turned it in. As a result, he was erroneously paid for days he was off work in July. Turck, again represented by counsel, filed his fourth workers' compensation lawsuit against Baker on July 15, 1996, with respect to the knee injury. Id. at 559. He returned to work on August 28, 1996.

At trial, the parties offered differing accounts of what occurred with regard to the overpayment between the time Turck returned to work and December 2, 1996, and essentially reiterate those positions on appeal. Baker claims that it, through human resource manager John Plusquellec, approached Turck about the overpayment twice during that period, but that Turck refused to pay it back and stated that he wanted to speak with his attorney. Id. at 973-84. Turck, on the other hand, claims that he attempted to discuss the issue with his immediate supervisor, Jimmy Vann, who directed him to Plusquellec after refusing to discuss the matter with him. Id. at 731. Turck then attempted to speak about the overpayment with Jack Cluck, his production superintendent, but Cluck told him that he could not discuss the matter because Turck had an attorney. Id. at 824. Turck alleges that Plusquellec also refused to talk to him about the overpayment because he was represented by counsel in his pending workers' compensation action against Baker. Id. at 734. Baker points out, and Turck concedes, that when he attempted to speak with Plusquellec, he did not use the word "overpayment," but spoke in more general terms about problems with his check, pay and disability benefits. Id. at 766-70.

As of December 2, 1996, the overpayment remained outstanding and Turck's workers' compensation action was pending. Turck received his final performance review on that date. It was overwhelmingly negative and warned

that if immediate improvement was not seen, disciplinary action "up to and including termination" would be taken.    Id. at 613-15.

Later that same day, Turck met with Plusquellec and Vann about the overpayment. Turck claims that he told them to take the whole amount out of his next check. Id. at 740. Plusquellec wanted Turck to sign a payroll deduction authorization and presented him with a calculation of the amount owed and the time sheet for the period in question. Turck claims that the calculation was erroneous. Id. at 741. He told the jury that he responded to Plusquellec as follows:

> I told him that I also wanted to talk to my work comp attorney before
> I signed anything, that I wasn't refusing to pay the money back, that I
> wanted to talk to my comp attorney, because I felt that I might
> jeopardize my comp case by signing something, or I felt like that I
> might even be fraudulent by signing something that I could see was
> in error in the time sheet.

Id. at 741-42. Vann confirmed that Turck never refused to repay the money but did refuse to sign the payroll deduction form without consulting with his attorney. Id. at 795, 799-800. At that point, Plusquellec told Turck to talk to his attorney that night so they could meet again in the morning.    Plusquellec never gave Turck a copy of the document he was to sign for his attorney to review.    Id. at 741, 795.

Turck left work at 7:00 p.m. on December 2, 1996, and was unable to contact his attorney that night or the following morning. He reported to work at 6:45 a.m. the following day. At about 10:00 a.m., he met with Plusquellec, Vann

-6-

and Cluck.  Id. at 798.  The meeting of the night before replayed itself with Plusquellec demanding repayment and Turck refusing to sign anything until he contacted his attorney.  At the conclusion of the meeting, Turck was terminated by Plusquellec .[1]

Turck commenced this action in Oklahoma state court on November 30, 1998, and Baker removed the case to federal court in March 1999.  In his Petition filed in state court, which continued to serve as the complaint following removal, Turck made the following allegations:

> 8.  On December 2, 1996, Turck was called into the office of Baker's local Human Resource Manager, John Plusquellec, to discuss the matter of an overpayment in wages made to Turck approximately one year earlier.
>
> 9.  Plusquellec demanded that Turck sign a document concerning this overpayment or he would be terminated.
>
> 10.  Turck requested that he be allowed to discuss the document which he was being requested to sign with his attorney so as to insure that he was not jeopardizing his pending worker's compensation action.  Turck even offered to have Baker deduct the alleged overpayment from his paycheck in lieu of signing the proffered document, which request was declined by Baker.
>
> 11.  Turck was terminated by Baker on December 3, 1996.
>
> 12.  Turck alleges that he was wrongfully termination [sic] by Baker in violation of 85 O.S. § 5 solely in retaliation of his having filed a workers' compensation claim against Baker.

---

[1]Turck requested that Plusquellec write a letter explaining the reasons for termination.  In the letter, Plusquellec states, "I have accepted your resignation . . . . in response to your refusal to repay the Company for the money owed due to overpayment."  Appellant's App. at 183.  However, it is clear from the other evidence that Turck was terminated.  See, e.g., id. at 637, 800.

Id. at 11.

After removal, discovery was conducted. Baker deposed Turck on August 19, 1999. On December 8, 1999, Baker moved for summary judgment on the grounds that Turck had failed to make out a prima facie case under § 5(A)(1). In his January 11, 2000, reply to Baker's motion for summary judgment, Turck makes it clear that he is suing Baker under § 5(A)(2),[2] and that the critical issue in this case hinges on "the right of a protected employee to retain counsel." Id. at 136. Baker filed a response to Turck's reply on January 24, 2000, in which it argued that paragraph 12 of the Petition expressly limits Turck to a cause of action under § 5(A)(1) and characterized Turck's § 5(A)(2) argument as an "eleventh hour inclusion of a new legal theory [in] an attempt to escape summary judgment by creating a sham fact issue." Id. at 184. In the event that the court

---

[2] OKLA. STAT. tit. 85, § 5 reads in pertinent part:

**§ 5. Discharge of employee–Prohibited grounds**
 A. No person, firm, partnership, corporation, or other entity may discharge . . . [an employee] because the employee has in good faith:
 1. Filed a [workers' compensation] claim;
 2. Retained a lawyer for representation regarding a [workers' compensation] claim;
 3. Instituted or caused to be instituted any proceeding under the provisions of this title; or
 4. Testified or is about to testify in any proceeding under the provisions of this title which relates to the employee's past or present employment.

decided to allow Turck to proceed on a § 5(A)(2) claim, Baker asked the court to re-open discovery so it could address the "new" claim.

The parties submitted a proposed Pretrial Order on February 8, 2000, which was entered on February 9, 2000. The document sets forth Turck's claim under § 5(A)(2), and Baker's objection to that claim, with its assertion that only a § 5(A)(1) claim was at issue. Id. at 246-69. However, the evidence listed in the Pretrial Order, including the testimony of witnesses for both sides, focuses on the allegations made in the Petition. See, e.g., id. at 255-56.

On February 24, 2000, the district court held a pretrial conference in which it instructed the parties to submit briefs on the issue of whether a § 5(A)(2) claim had been properly pled. The court held a final pretrial hearing on March 6, 2000, the day of trial, at which it found that the Petition contained factual allegations supporting a § 5(A)(2) claim sufficient to give Baker notice of that claim and denied Baker's motion for summary judgment. Id. at 684-85. At that point, Baker reiterated its request for a continuance and a re-opening of discovery. It stated that it wanted to depose Turck again, to depose his workers' compensation attorney, and to have time to address the § 5(A)(2) claim by dispositive motion. Id. at 689. The district court denied the request.

Finally, Baker asked the district court to incorporate its proposed amendments to the Pretrial Order. The amended version included evidence of

Turck's performance and behavior problems. Id. at 440-41. The court, having already made it known that it considered those issues to be irrelevant to this case, denied Baker's request to amend the Pretrial Order. Id. at 695-96.

Even so, Baker attempted to introduce evidence of Turck's disciplinary problems, poor performance and past workers' compensation actions at trial. The district court excluded that evidence as irrelevant. It also overruled Baker's objection to the testimony of Turck's expert witness and its objection to the court's interpretation of § 5(A)(2) as found in the jury instructions. After finding for Turck, the jury awarded him $111,138 in past lost wages and benefits, $108,010 in future lost wages and benefits, and $6000 for mental anguish and emotional distress.

## II. DISCUSSION

**A.** **Did the District Court Err in Ruling that Turck Properly Pled a § 5(A)(2) Claim and in Denying Baker's Motions to Continue and to Amend the Pretrial Order Relating to that Issue?**

As indicated above, Baker contends that the district court erred as a matter of law in finding that Turck's Petition properly pled a § 5(A)(2) claim and in allowing the case to be tried on that claim. It asserts that the Petition expressly excluded all but a § 5(A)(1) claim, and thus the district court's decision to allow

-10-

the case to go to trial on a § 5(A)(2) claim substantially prejudiced Baker in presenting its defense.

In addition, Baker advances two related and subsidiary arguments. First, it argues that the district court erred in denying its motion for a continuance because, in order to alleviate the unfair prejudice resulting from the allegedly late inclusion of a § 5(A)(2) claim in this lawsuit, it needed additional time to conduct discovery and prepare a defense with respect to the "new" claim. Second, Baker argues that the district court erred in refusing to amend the Pretrial Order because amendment was required so that the Pretrial Order would reflect the alleged addition of a § 5(A)(2) claim to the case.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). If the statement is sufficient to give the notice required, Rule 8(a)(2) is satisfied and "[i]t is not necessary to plead under what particular law the recovery is sought." United States v. Missouri-Kansas-Texas R.R. Co., 273 F.2d 474, 476 (10th Cir. 1959). See also, Hail v. Heyman-Christiansen, Inc., 536 F.2d 908, 909 n.2 (10th Cir. 1976); Misco Leasing, Inc. v. Keller, 490 F.2d 545, 548 (10th Cir. 1974).

-11-

Although we have stated that "[a]s a general rule, a plaintiff should not be prevented from pursuing a valid clam just because she did not set forth in the complaint a theory on which she could recover," a late shift in the focus of the case should not be allowed if it prejudices the other party's ability to defend the action on the merits. Evans v. McDonald's Corp., 936 F.2d 1087, 1090-91 (10th Cir. 1991). Moreover, "the liberalized pleading rules [do not] permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case." Id. at 1091. Allowing this practice "would waste the parties' resources, as well as judicial resources, on discovery aimed at ultimately unavailing legal theories and would unfairly surprise defendants, requiring the court to grant further time for discovery or continuances." Id. Accordingly, although "[a]ll pleadings shall be so construed as to do substantial justice," FED. R. CIV. P. 8(f), a complaint must be specific enough to put the defendant on notice of the claim(s) against him in order to avoid inefficiency and unfair prejudice.

Factual allegations supporting a claim under § 5(A)(2) are clearly set out in the Petition. Taken alone, those allegations would provide adequate notice that a § 5(A)(2) claim was at issue. The difficulty, however, arises from the language in paragraph 12 of the Petition which states, "Turck alleges that he was wrongfully termination [sic] by Baker in violation of 85 O.S. § 5 solely in retaliation of his

-12-

having filed a workers' compensation claim against Baker." Appellant's App. at 11 (emphasis added). Baker asserts that paragraph 12 expressly limits Turck to a § 5(A)(1) claim and that the Petition gives no notice that a § 5(A)(2) claim is being raised. After rereading the Petition, the district court stated that Baker's allegation that it had no prior notice of a § 5(A)(2) claim "simply cannot be true" because "the circumstances and situation relating to the overpayment and the payback of overpayment request stands out here as a fundamental reason . . . or motivating factor in the discharge and that does fall within [§ 5(A)(2)] . . . and I think it is adequately so pled." Id. at 685. We agree.

As indicated above, the only substantive factual allegations in the Petition relate to a § 5(A)(2) claim. A reasonable reading of those allegations should have put Baker on notice that Turck was alleging that a substantial motive for his termination was retaliation for his insistence on speaking with his workers' compensation attorney before signing anything regarding the overpayment. Indeed, when Baker's counsel deposed Turck on August 19, 1999, she asked him, "[t]ell me why you were fired because of your workers' comp injury or because you filed a claim or because you saw an attorney with respect to your claim." Id. at 354. Although his answer was unresponsive, the question reveals that Baker was aware that a § 5(A)(2) claim was a possibility given the factual allegations made in the Petition, and, more fully, in Turck's deposition. Finally, Baker does

-13-

not dispute the basic facts giving rise to a § 5(A)(2) claim and restates them in the "Undisputed Material Facts" section of its motion for summary judgment filed December 8, 1999. Id. at 39-41.

We have examined the Petition at length and concede that it is poorly drafted. However, the issue is not whether the Petition is skillfully drafted, but whether it contains a plain statement of Turck's claims sufficient enough to give Baker notice of the claims against which it must defend. We conclude that the district court did not commit reversible error by ruling that the factual allegations made in the Petition gave Baker notice that Turck was alleging that his refusal to sign anything in connection with the wage overpayment until he consulted his workers' compensation attorney was a significant motivating and retaliatory factor in his termination in violation of § 5(A)(2).

That conclusion is dispositive of Baker's claims of error regarding a continuance and its related claims of prejudice. Furthermore, even assuming arguendo that Baker did not have notice of the § 5(A)(2) claim until Turck filed his response to Baker's motion for summary judgment, Baker has not demonstrated that its ability to defend this action was significantly prejudiced by the district court's actions. This is because: (1) Baker had notice of the § 5(A)(2) claim at least by January 11, 2000, nearly two months prior to trial; (2) even though discovery was closed at that point, Baker had already questioned

Turck extensively about the events immediately preceding his termination, including the demand that he sign a payroll deduction authorization, his refusal to do so until he consulted with his workers' compensation attorney and his termination; (3) the events of December 2nd and December 3rd, 1996, were laid out for the jury in full through the testimony of Vann, Plusquellec, Cluck and Turck; (4) Baker offered a full and competent defense to Turck's § 5(A)(2) claim, and (5) Baker has failed to identify any specific material and admissible evidence it would have obtained and presented had the district court granted a continuance and re-opened discovery. Baker's conclusory assertions that it needed to depose Turck for a second time and to depose his workers' compensation attorney lead only to pure speculation.

As stated above, the Pretrial Order definitively states that Turck was proceeding under § 5(A)(2) and indicates that the evidence to be presented at trial would focus on the allegations made in the Petition. The substantive allegations in the Petition support a § 5(A)(2) claim. Thus, the Pretrial Order set forth a § 5(A)(2) claim and anticipated that the evidence would focus on that claim. Moreover, Baker has failed to show that the Pretrial Order was insufficiently definitive or that the district court's refusal to amend that document worked a

manifest injustice. [3] See FED. R. CIV. P. 16(e).  Accordingly, we conclude that the district court did not err in denying Baker's request to amend the Pretrial Order.

**B.      Meaning of OKLA. STAT. tit. 85, § 5(A)(2)**

Baker argues that the district court erred as a matter of law in its interpretation of § 5(A)(2) and that the court further erred when it instructed the jury in accordance with its misinterpretation.  We review the district court's determination of § 5(A)(2) de novo.      Salve Regina Coll. v. Russell    , 499 U.S. 225, 231 (1991).   "We review the district court's decision to give a particular jury instruction for abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law."  United States v. McClatchey    , 217 F.3d 823, 834 (10th Cir. 2000) (quotation omitted).

Baker attempts to characterize the district court's interpretation of § 5(A)(2) as follows: "[e]ssentially, the District Court's interpretation of this section, mandates that an employer allow an employee access to an attorney before any adverse employment action may be taken.  In other words, the District

_____

[3]A significant feature of Baker's amended pretrial order was its expansion of the scope of evidence to be presented to include Turck's past behavior and performance problems.  Appellant's App. at 440-41.  The district court ruled that such evidence was irrelevant to Baker's stated reason for Turck's termination.       As discussed below, those rulings were not erroneous.

Court's interpretation of the statute creates a civil "Miranda" right for employees facing discharge or other adverse action." Appellant's Principal Br. at 38-39. All of the arguments raised in Baker's briefs on this issue are devoted to proving that § 5(A)(2) "does not provide an employee a right to counsel before an adverse employment action may be taken with regard to an employee." Appellant's Reply Br. at 14 n. 4. However, a fair reading of the district court's instructions on § 5(A)(2) does not support Baker's characterization.

The district court's interpretation of an employee's rights under § 5(A)(2) is best stated in the jury instructions: "You are advised that the term 'right to counsel for representation' concerning a workers' compensation claim as stated in the Oklahoma Workers' Compensation Act includes the right to reasonable access to and advice from such retained counsel regarding any matter relating to a workers' compensation claim." Appellant's App. at 486.

The district court's interpretation speaks for itself and clearly states that § 5(A)(2) grants employees the right to consult with their workers' compensation attorney about a workers' compensation claim without being terminated in retaliation therefor. Although Baker appears to find this interpretation palatable, [4]

---

[4]Baker seems to approve of the district court's interpretation as we understand it. In its reply brief, Baker states that it "has never asserted that an employee could be lawfully discharged if he tried to consult with his workers' compensation attorney." Appellant's Reply Br. at 14 n.4.

we must review the matter to ensure that the district court correctly construed the statute. [5]

We start with the statute itself. It prohibits an employer from terminating an employee in retaliation for "[r]etain[ing] a lawyer for representation regarding a [workers' compensation] claim." OKLA. STAT. tit. 85, § 5(A)(2). A literal reading of the statute could support an interpretation that it only protects employees from retaliatory discharge when they retain an attorney, but not when they consult with that attorney about their workers' compensation claim.

However, because the Oklahoma Workers' Compensation Act is remedial in nature, "it should be accorded liberal construction in favor of those entitled to its benefits." Upton v. State of Oklahoma ex rel. Dep't of Corr., 9 P.3d 84, 88 (Okla. 2000). An example of the Oklahoma courts' liberal interpretation of § 5 is found in Buckner v. Gen. Motors Corp., 760 P.2d 803 (Okla. 1988). In Buckner, the employee was injured on the job and seen by a company doctor on site and placed on limited duty. A few days after the first visit, she had pain from the injury again and sought to see the same company doctor about it. While she was waiting to see the doctor, she was fired for loitering. Id. at 805. At issue was

---

[5]Section 5(A)(2) has not been interpreted by the Oklahoma courts. At oral argument, we asked the parties whether it would be proper or necessary, in their opinion, to certify a question on its meaning to the Oklahoma Supreme Court. Both stated that certification was not necessary.

-18-

whether she had, at that point, "instituted proceedings" within the meaning of OKLA. STAT. tit. 85, § 5(A)(3). [6] The Oklahoma Supreme Court held that she had, stating, "the provision of medical treatment by the employer, when accompanied by circumstances . . . which would lead a reasonable employer to infer that a workers compensation claim would in all probability ensue, constitutes the institution of proceedings." Buckner, 760 P.2d at 811.

The liberal interpretation of the phrase "institution of proceedings" in Buckner supports the district court's interpretation of the phrase "retain a lawyer" in this case. After reviewing Buckner and other Oklahoma cases in which § 5 is construed, and keeping in mind that the statute is to be construed liberally in favor of employees, we conclude that the district court's interpretation of § 5(A)(2), and the jury instructions on the subject, taken as a whole, were not erroneous.

## C.  Evidentiary Rulings Regarding Past Behavior and Workers' Compensation Claims

It is undisputed that Baker's stated reason for terminating Turck was his refusal to repay the overpayment that occurred in July 1996. Appellant's App. at

---

[6]OKLA. STAT. tit. 85, § 5(A)(3) provides that an employer cannot terminate an employee in retaliation for having "[i]nstituted or caused to be instituted any proceeding under the provisions of this title."

120, 637. Throughout this litigation, Baker has attempted to introduce evidence of Turck's past performance and behavior problems and his previous workers' compensation claims in order to prove that it had a legitimate, non-retaliatory motive for his discharge. The district court refused to allow that evidence on the ground that it was irrelevant to the stated reason for discharge. We review the district court's evidentiary rulings for an abuse of discretion, and will not disturb them unless we have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." United States v. Curtis, 147 F.3d 1200, 1217 (10th Cir. 1998) (quotation omitted).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. We have reviewed the district court's rulings in light of Baker's stated reason for discharging Turck and conclude that the decision to exclude evidence of Turck's past behavior problems and prior workers' compensation claims on the ground that the proffered evidence was not relevant to the reason given for discharge was well within the district court's discretion.

**D.      Admission of Expert Testimony**

At trial, Turck's counsel called accountant Gary Barnes for the purpose of giving expert testimony on Turck's past and future lost wages resulting from his termination by Baker. Following a brief voir dire, Baker's counsel objected to Barnes' proposed testimony on the grounds that he was not qualified to give an opinion as to Turck's future lost wages and that the basis of his proposed testimony was unreliable. The district court overruled those objections. We review for an abuse of discretion. Goebel v. Denver & Rio Grande W.R.R. Co., 215 F.3d 1083, 1087 (10th Cir. 2000).

An expert witness is a person who is qualified "by knowledge, skill, experience, training, or education," and his testimony will be admitted if it will assist the trier of fact to understand the evidence or determine a fact in issue. FED. R. EVID. 702. In order to assist the trier of fact, expert testimony must be reasonably reliable. Hence, the Supreme Court has charged the district court with the responsibility of acting as a gatekeeper to exclude unreliable expert testimony. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993). Expert opinions "must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation." Gomez v. Martin Marietta

Corp. , 50 F.3d 1511, 1519 (10th Cir. 1995) (quotation omitted). However, "absolute certainty is not required." Id.

Barnes stated that he had a bachelor's degree in accounting, had done accounting work since 1972 and had run his own accounting business since 1983. Appellant's App. at 849-51. Barnes also explained that he used salary data given to him by Turck. His figures for back pay involved subtracting what Turck would have made if still employed by Baker from what he actually earned since his termination. Barnes testified that to determine future lost wages, he entered Turck's current and past salary, as well as information regarding overtime, bonuses and 401K plans, into a computer program that calculated an amount and discounted it to present value. He stated that he did not factor in real wage growth in either calculation and that he tried to avoid speculation by simply using figures that were true at the time. Id. at 886-87. Finally, Barnes acknowledged that if Turck received overtime or raises at his new job, his calculation of future lost wages would be too high. [7]

In short, the district court had before it sufficient information to determine whether Barnes was qualified to perform the calculations necessary to form an opinion and testify with regard to Turck's lost wages and to decide whether the

---

[7] The jury apparently weighed Barnes' testimony in light of the potential uncertainty of the figures. It awarded Turck a total of $219,148 in lost wages even though Barnes had estimated Turck's lost wages to be $344,236.

basis for that opinion and testimony was reliable. Based on our review of that information under the foregoing legal authorities, we conclude that the district court did not abuse its discretion by permitting Barnes to testify.

**E.      Judgment as a Matter of Law**

After the jury verdict, Baker moved for judgment as a matter of law. The district court denied the motion. Baker argues that the district court erred in denying its motion because the evidence does not support the jury verdict. We review de novo.   Baty v. Willamette Indus., Inc.   , 172 F.3d 1232, 1241 (10th Cir. 1999). However, we will reverse "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Id. (quotation omitted). Moreover, "[w]e do not weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for [those] of the jury." Id. Finally, we view the evidence and any reasonable inferences to be drawn therefrom in the light most favorable to Turck.        Id.

By way of summarizing and restating the facts set out above, the evidence and the inferences that the jury could reasonably draw therefrom, showed that: (1) On December 2, 1996, Baker requested that Turck sign a payroll deduction authorization so that it could recover the overpayment from his paychecks; (2) Turck believed the amount of the overpayment as calculated by Baker was

erroneous and feared that authorizing the repayment might prejudice his pending workers' compensation claim; (3) as a result of the foregoing concerns, Turck refused to sign the form without consulting his workers' compensation attorney; (4) Turck was unable to contact his attorney between 7:00 p.m., the time at which his shift ended on December 2, 1996, and 6:45 a.m. the following day when his December 3, 1996, shift began; (5) on December 3, 1996, Baker again demanded that Turck sign the payroll deduction authorization and Turck again refused to do so until he was able to consult his workers' compensation attorney; and (6) Baker then terminated Turck. This evidence was sufficient to support the jury's verdict. Accordingly, the district court did not err in denying Baker's motion for judgment as a matter of law.

### III. CONCLUSION

For the reasons stated above, we AFFIRM the judgment against Baker.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge