FILED
**United States Court of Appeals**
**Tenth Circuit**

**October 22, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ESTATE OF CHARLES ANTHONY
HURTADO, by and through its personal
representative Bernie R. Hurtado,

    Plaintiff - Appellant,

v.

DR. JERRY A. SMITH,

    Defendant - Appellee.

No. 23-1354

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:20-CV-03505-DDD-KAS)**

_____

Liana G. Orshan (David Lane, with her on the briefs), Killmer Lane, L.L.P., Denver,
Colorado, for Plaintiff-Appellant.

C. Todd Drake, Hershey Decker Drake, PLLC, Lone Tree, Colorado, for Defendant-
Appellee.

_____

Before **HARTZ**, **KELLY**, and **BACHARACH**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

_____

    Plaintiff-Appellant, the Estate of Charles Anthony Hurtado, brought this action

against Defendant-Appellee, Dr. Jerry A. Smith, alleging that Dr. Smith acted with

deliberate indifference to serious medical needs in treating Mr. Hurtado's perineal

abscess.  I Aplt. App. 119–21.  The district court granted summary judgment to Dr. Smith, finding no genuine dispute of material fact as to whether Dr. Smith knew of and disregarded a significant risk to Mr. Hurtado's health or safety.  Hurtado v. Smith, No. 1:20-cv-03505, 2023 WL 7474599, at *3 (D. Colo. Oct. 12, 2023).  On appeal, Plaintiff contends that a genuine dispute of material fact exists regarding whether Dr. Smith knowingly or recklessly disregarded the risk involved in Mr. Hurtado's treatment.  Aplt. Br. at 1.  Plaintiff maintains that Dr. Smith conceded that the treatment was inadequate for the type of abscess Mr. Hurtado had.  Aplt. Br. at 1.  Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

Mr. Hurtado was an inmate at Buena Vista Correctional Facility in Colorado.  II Aplt. App. 482.  On November 27, 2018, he was seen at the Buena Vista health services clinic for a "[r]ight buttock/peri-rectal abscess."  Id. at 314–15.  Mr. Hurtado was then transferred to the emergency room at the Heart of the Rockies Regional Medical Center.  Id. at 315, 483.  An intake nurse listed his status as "non-emergent" and noted that Mr. Hurtado's health history included several significant issues such as hepatitis, cirrhosis, and benign prostatic hypertrophy.  I Aplt. App. 165–66, 169.

Mr. Hurtado was first examined by Dr. Victor Adan.  Id. at 168–71.  Dr. Adan noted that Mr. Hurtado's pain level was 8/10, and that he was alert and in no acute distress.  Id. at 169.  Dr. Adan then ordered a pelvic CT scan which showed the abscess.  Id.  Dr. Adan also noted abnormalities in liver function consistent with hepatitis and

2

cirrhosis, and an elevated white blood cell count which he attributed to the abscess. Id.

Mr. Hurtado was then referred to Dr. Smith, who consulted with Dr. Adan and performed a diagnostic needle aspiration that removed a small amount of tan material. Id. at 169, 176. No abscess cavity was located. Id. at 176. In his deposition, Dr. Smith testified that "[a]t the time of [his] examination, there was no indication there was a liquified cavity" and that he would "wait . . . for liquefaction to occur" before performing a drainage procedure. II Aplt. App. 338. Dr. Smith prescribed oral antibiotics and pain medication and directed Mr. Hurtado to contact a physician if his condition worsened, and to follow up within two days. Id. at 331–32. Dr. Smith prescribed oral antibiotics in part because Mr. Hurtado was a "sensitive patient" and the antibiotics were "worth a trial" based on the fact that he found no liquefied cavity. Id. at 339. Dr. Adan discharged Mr. Hurtado, noting that his pain level had reduced to 2/10 and his condition was stable. I Aplt. App. 170.

Later that evening, Mr. Hurtado returned to the emergency room with intense pain. II Aplt. App. 343. His first sepsis screen at 9:06 p.m. was negative, but his second at 10:30 p.m. was positive, and he was admitted to the surgical unit. Id. at 343–46. Mr. Hurtado underwent surgery to drain the abscess, but he began vomiting blood when he was induced with anesthesia. Id. at 483. The surgeon eventually performed incision and drainage ("I&D") operations to drain the abscess. Id. at 420–22.

After the surgeries, Mr. Hurtado was transferred to Memorial Hospital in Colorado Springs where he was diagnosed with liver disease, kidney failure, and complications from the abscess. Id. at 483. He spent two weeks in the hospital before his family

elected to pursue comfort care and he was taken off life support and died.  I Aplt. App. 215.  The autopsy listed Mr. Hurtado's death as "natural" but caused by "complications of perineal abscess" and contributed to by "hypertensive cardiovascular disease, obesity, and cirrhosis of the liver due to chronic hepatitis C."  II Aplt. App. 423–24.

In its amended complaint, Plaintiff alleged that Dr. Smith's treatment constituted deliberate indifference to serious medical needs because Dr. Smith did not immediately drain the abscess or prescribe intravenous antibiotics.  I Aplt. App. 117–21.  According to the district court, a factual dispute existed as to whether Mr. Hurtado's need was "sufficiently serious" under the objective component of deliberate indifference.  II Aplt. App. 487.  However, it concluded that no genuine dispute of material fact existed as to the subjective component — specifically whether Dr. Smith knew of but disregarded a significant risk to Mr. Hurtado's health or safety.  Id.  It found that, even if Dr. Smith's diagnosis and subsequent treatment was incorrect, it was not so unreasonable as to meet the standard for deliberate indifference.  Id. at 487–89.

Plaintiff's expert, Dr. Harris, opined that Dr. Smith acted with deliberate indifference because he "knew or should have known" of the risk to Mr. Hurtado.  Id. at 488.  Plaintiff's other expert, Dr. Schechter, testified that no reasonable physician confronted with Mr. Hurtado's situation would have thought that oral antibiotics were adequate treatment.  Id. at 433.  The district court held that "[a]s an expert witness, Dr. Harris may testify as to industry standards for doctors and other issues of fact but may not opine on legal standards."  Id. at 488.  Applying the correct legal standard, the district court held that "[t]he evidence in this case does not show more than ordinary negligence

4

or medical malpractice" and Plaintiff's claims for deliberate indifference must fail as a matter of law.  Id. at 489.  The district court did not directly address Dr. Schechter's opinions.  See id. at 488; Aplt. Reply Br. at 11.

## Discussion

We review the district court's grant of summary judgment de novo.  Est. of Beauford v. Mesa Cnty., 35 F.4th 1248, 1261 (10th Cir. 2022).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law . . . ."  Est. of Beauford, 35 F.4th at 1261.  We review the factual record "in the light most favorable to the non-moving party."  Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006).  Still, "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings."  Id. (citation omitted).  Furthermore, where the nonmovant bears the burden at trial on an essential element of a claim, the nonmovant "must go beyond the pleadings and designate specific facts" as to that element to survive summary judgment.  Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000) (citation omitted).

### A.  The Legal Framework of Deliberate Indifference Claims

In Estelle v. Gamble, the Supreme Court held that deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's prohibition on cruel and unusual punishment if it "constitutes the unnecessary and wanton infliction of pain."  429 U.S. 97, 104 (1976) (citation omitted).  However, the Court made clear that "an

5

inadvertent failure to provide adequate medical care" does not arise to the level of deliberate indifference. Id. at 105–06. Similarly, "a complaint that a physician has been negligent in diagnosing or treating a medical condition" does not violate the Eighth Amendment. Id. at 106.

The Court further clarified the scope of Eighth Amendment claims in Farmer v. Brennan. 511 U.S. 825, 834 (1994). The Court explained that such claims must satisfy both an objective and a subjective component. Id. Under the objective component, the alleged deprivation must be "sufficiently serious" and pose "a substantial risk of serious harm." Id. Under the subjective component, the official must have a "sufficiently culpable state of mind." Id. The official must "know[] of and disregard[] an excessive risk to inmate health or safety." Id. at 837. This standard "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" Id. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)).

Our circuit has addressed the line between mere negligence and deliberate indifference many times. In Self v. Crum, we outlined several circumstances that rise to the level of deliberate indifference: (1) "a medical professional recognizes an inability to treat the patient" but "declines or unnecessarily delays referral"; (2) "a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition"; and (3) "a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical

6

emergency[.]"  439 F.3d at 1232.[1]

Thus, a jury may infer conscious disregard if a doctor "responds to an obvious risk with treatment that is patently unreasonable[.]"  Id.  However, in Self, no evidence supported such an inference because "[a]t worst, the evidence show[ed] Crum misdiagnosed Self's condition" and a misdiagnosis is insufficient to satisfy the subjective component of a deliberate indifference claim.  Id. at 1234.  Plaintiff could not overcome this deficiency by arguing that "a competent doctor looking at [his] symptoms" would have properly diagnosed him because this argument would "remove[] the subjective inquiry from the deliberate indifference test."  Id. at 1233–34.

Comparatively, in Oxendine v. Kaplan, we found an inference of a patently unreasonable response to an obvious risk where the doctor noted that an inmate's gangrenous finger had turned "jet black" and was decaying rather than healing, but nonetheless only prescribed the inmate Tylenol.  241 F.3d 1272, 1278–79 (10th Cir. 2001).  Similarly, in Lucas v. Turn Key Health Clinics, LLC, we found a plausible claim of deliberate indifference where a doctor, over an extended period, prescribed only Tylenol and ibuprofen to an inmate suffering from chlamydia, ongoing and abnormal vaginal discharge and bleeding, and E. Coli growth.  58 F.4th 1127, 1140–41 (10th Cir. 2023).  Moreover, the doctor was dismissive of the inmate's complaints, accusing her of abusing the sick call system.  Id. at 1140.

---

[1] We have also recognized that deliberate indifference claims can be brought against a medical professional or other prison official who acts as a "gatekeeper" and prevents an inmate from receiving treatment.  See Sealock, 218 F.3d at 1211.

In Sealock v. Colorado, a genuine dispute of material fact existed as to the defendant physician's assistant's knowledge of the risk to the inmate's health. 218 F.3d at 1211–12. Critically, conflicting testimony existed as to whether the assistant knew that the inmate was having unexplained chest pain, and the assistant conceded that, had he known about the chest pain, he would have been deliberately indifferent in failing to call an ambulance. Id. at 1211. In that same case, we also reversed the grant of summary judgment to the defendant jail shift commander who did not call for assistance despite being told that the inmate was having a heart attack. Id. at 1210–11. In finding that the commander "knew of and disregarded the excessive risk to appellant's health that could result from the delay," we highlighted evidence that, after the commander knew the inmate might be having a heart attack, he refused to drive the inmate to the hospital and simply told him: "Just don't die on my shift. It's too much paper work." Id. at 1208, 1210–11. Comparatively, we affirmed the district court's grant of summary judgment to a nurse who merely misdiagnosed the inmate's chest pains as the flu rather than a heart attack. Id. at 1208, 1211, 1212 n.7.

Together, these cases demonstrate that "[t]he deliberate indifference standard 'lies somewhere between the poles of negligence at one end and purpose or knowledge at the other.'" Mata v. Saiz, 427 F.3d 745, 752 (10th Cir. 2005) (quoting Farmer, 511 U.S. at 836). The subjective component of a deliberate indifference claim "is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." Self, 439 F.3d at 1232.

### B. Application: Whether a Genuine Dispute of Material Fact Exists as to the Subjective Component

Against this backdrop, we consider whether the district court properly granted summary judgment in favor of Dr. Smith. Indeed, "[w]hether [Dr. Smith] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Farmer, 511 U.S. at 842.

Plaintiff relies on Sealock, where we identified a material factual dispute because there was a "conflict in the evidence" as to whether a defendant knew about the inmate's chest pains, and the defendant conceded that, had he known about the chest pains, he would have been deliberately indifferent by failing to call an ambulance. 218 F.3d at 1211–12; Aplt. Br. at 20. Here, Plaintiff argues that a similar factual dispute exists — that evidence in the light most favorable to it establishes that Dr. Smith lied about not being aware of the abscess, and that Dr. Smith conceded that had he been aware of the abscess, his treatment would have been inadequate because the only possible treatment would be an I&D procedure. Aplt. Br. at 14, 18–20.

This argument mischaracterizes Dr. Smith's testimony. Dr. Smith testified that I&D would be warranted if he found a "known liquefied pocket," but clarified that he would not drain every infected area and that he found no liquefied cavity on Mr. Hurtado. II Aplt. App. 338. This testimony does not create a material factual dispute because, unlike Sealock, even if a jury inferred that Dr. Smith knew Mr. Hurtado had an abscess, Dr. Smith never conceded that he "knew he failed to provide the necessary treatment" for

an abscess.  Aplt. Br. at 14.  Instead, his testimony was that he would have performed an I&D operation only if he found an abscess with a "liquefied pocket."  II Aplt. App. 338.  Thus, the factual record contains no evidence from which a jury could infer conscious disregard.  See Self, 439 F.3d at 1235 ("Summary judgment requires more than mere speculation.  It requires some evidence, either direct or circumstantial, that [defendant] knew about and consciously disregarded the risk.").

Plaintiff also argues that the jury could infer conscious disregard from Dr. Smith's "patently unreasonable" response to an "obvious risk."  Aplt. Reply Br. at 13.  However, the facts of this case are dissimilar to circumstances in which this court has found medical treatment so patently unreasonable as to constitute deliberate indifference.  In those cases, the doctors responded to obviously extreme conditions with obviously inadequate treatments.  See Lucas, 58 F.4th at 1140 (doctor treated patient displaying vaginal bleeding, discharge, and heavy E. coli growth with Tylenol and ibuprofen); Oxendine, 241 F.3d at 1278–79 (doctor treated a decaying, jet-black, gangrenous finger with Tylenol).

Here, Mr. Hurtado's condition differs.  The ER nurse classified Mr. Hurtado as a "non-emergent" patient.  I Aplt. App. 169.  Then, after Dr. Smith prescribed antibiotics to Mr. Hurtado, Dr. Adan discharged Mr. Hurtado from the hospital in "good and stable condition."  Id. at 170.  Indeed, Mr. Hurtado reported that his pain level had decreased before he left the hospital.  Id. at 169–70.

Furthermore, Dr. Smith's treatment was not obviously deficient.  Dr. Smith consulted with Dr. Adan, who had examined Mr. Hurtado, and then performed his own

10

examination, performed a needle aspiration, and noted that "no abscess cavity [was] located." Id. at 176. Dr. Smith prescribed oral antibiotics in part because Mr. Hurtado was a "sensitive patient" and these antibiotics were "worth a trial" because he found no liquefied cavity. II Aplt. App. 339. No evidence suggests that Dr. Smith was unsympathetic or dismissive towards Mr. Hurtado. Cf. Lucas, 58 F.4th at 1141; Sealock, 218 F.3d at 1210–11.

Plaintiff focuses on its experts' characterization of deliberate indifference based on deficiencies in Dr. Smith's treatment. Aplt. Reply Br. at 10–13. Dr. Harris defined deliberate indifference as a doctor "making a decision where the negative consequences are predictable," and testified that Dr. Smith was deliberately indifferent when he failed to immediately perform an I&D operation. Id. at 10–11. Dr. Schechter testified that "every reasonable physician" would have known that treatment through oral antibiotics rather than an I&D operation was inadequate. Id. at 11–12.

However, as the district court correctly pointed out, expert witnesses may testify as to industry standards, but not as to legal standards, and Plaintiff cannot attempt to redefine the standard for deliberate indifference under the Eighth Amendment. II Aplt. App. 488. Indeed, Dr. Harris' standard for deliberate indifference ignores the reality that doctors constantly deal with probabilities and make medical decisions in the face of risk. See Estelle, 429 U.S. at 107 ("A medical decision . . . does not represent cruel and unusual punishment."). Similarly, Dr. Schechter's account of the treatment that a reasonable physician would have given is plainly incompatible with Farmer's requirements. 511 U.S. at 843 n.8 ("It is not enough merely to find that a reasonable

11

person would have known, or that the defendant should have known[.]”); see also Self, 439 F.3d at 1233 (rejecting argument that competent doctor would have acted otherwise because it removes the subjective inquiry from the deliberate indifference test).  Thus, the testimony of Plaintiff's experts as to what Dr. Smith should have done at best may support medical negligence, but it does not create an issue of fact as to deliberate indifference.

   **AFFIRMED.**