**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**February 27, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

KEYNA LEONARD, as the surviving
daughter of decedent; as the
Administrator of the deceased Arlen
Dority,

     Plaintiff - Appellant,

v.

HMG PARK MANOR OF SALINA,
LLC, d/b/a Smoky Hill Rehabilitation
Center; HMG SERVICES, LLC,

     Defendants - Appellees.

No. 24-3009
(D.C. No. 2:22-CV-02267-KHV)
(D. Kan.)

_____

### ORDER AND JUDGMENT*

_____

Before **HARTZ**, **KELLY**, and **FEDERICO**, Circuit Judges.

_____

This case arises out of the death of an 82-year-old resident in a

nursing home. The decedent, Arlen Dority, fell and fractured his right hip

at HMG Park Manor of Salina, LLC, d/b/a Smoky Hill Rehabilitation Center

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Federal Rule
of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

(Smoky Hill), a skilled nursing facility in Salina, Kansas. Tragically, Dority died in the hospital the day after falling at Smoky Hill.

Following his death, Dority's surviving daughter and the administrator of his estate, Keyna Leonard, sued Smoky Hill and several related corporate entities (Defendants) in the United States District Court for the District of Kansas. She alleged that Defendants negligently caused Dority's fatal fall and are responsible for his wrongful death.

The district court granted summary judgment to Defendants based on a failure to establish a genuine issue of material fact on proximate cause, a required element of negligence.[1] As it explained: "[t]he record is completely devoid of evidence, from lay or expert sources, that Dority's fall was the proximate result of any breach of duty by either defendant." Aplt. App. IV at 31. Leonard timely appeals.

Final judgment was entered following the entry of summary judgment, so we have jurisdiction under 28 U.S.C. § 1291. We affirm.[2]

---

[1] Leonard does not argue on appeal that the wrongful death claim was dismissed in error, so it is not properly before us. *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014) ("[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue." (internal quotation marks omitted)).

[2] Judge Hartz joins this Order and Judgment except for footnote 4.

2

## I. BACKGROUND

### A. Facts and Evidence

Unless otherwise indicated, the following facts were undisputed at summary judgment.

Dority fell and broke his right hip at around 1:25 a.m. on April 18, 2021. He had moved into Smoky Hill only two weeks prior to the fall, after a fall at his home on April 6 and an overall decline in his ability to care for himself. However, prior to the fall in the middle of the night on April 18, he had not fallen while a resident at that facility.

The district court found that nobody witnessed Dority's fall. However, according to Leonard, the nurse who was assigned to care for Dority the night of his fall (Andrea Stika) telephoned Leonard near the time when Dority fell and said that she had dropped Dority in his room while attempting to transfer him. Nurse Stika added a note in Dority's chart a few hours after he fell, stating:

> At approx[imately] 1:25 [a.m.] this morning, this nurse heard resident hollering out for help in his room. Upon arriving, resident was found lying on the floor against the wall, mostly on his left side. He was complaining of right hip and knee pain from his fall, and has scraped his elbow [and] behind his right ear. When touching the right hip, [Dority] yelled out in pain. He stated that he could not move it. Neuros were done, and no obvious injury noted, besides the scrape behind right ear.

Aplt. App. IV at 26.

3

Within minutes of Dority's fall, an ambulance arrived and took him to the emergency room at Salina Regional Medical Center. There, x-rays confirmed that Dority's fall had fractured his right hip. The next day, he died from complications; his death certificate listed his hip fracture as the primary cause of his death.

## B. Procedural History – Summary Judgment Grant

The year following Dority's death, Leonard filed a negligence and wrongful death lawsuit. As defendants, she named Smoky Hill and several of its related corporate entities, which either funded or managed Smoky Hill.

During discovery, Leonard designated and offered a nursing expert, Nurse Tache, and a medical doctor, Dr. Kirby, to support her case. A deposition was taken of Nurse Tache, which was made part of the record.

In Nurse Tache's deposition, she testified that there are "possibly five different versions" of how Dority might have fallen and broken his hip. Aplt. App. III at 102. She testified that Defendants departed from the standard of care in six different ways, but she volunteered that "[w]e have no idea" how Dority fell and that, "I guess it would have to be – the jury can make that decision." *Id.* at 102–03. She also said that her opinions "all apply equally" to all five versions of how the fall might have happened. *Id.* at 103. She also made clear that she was *not* opining that Dority was being

4

improperly transferred by one nurse (instead of two) when he fell. *See id.* at 85 ("I didn't say he was being transferred at that time, no.").

The district court reviewed the testimony and opinions from Leonard's two expert witnesses, Nurse Tache and Dr. Kirby. Beginning with Dr. Kirby, he was offered by Leonard as an expert to opine on the medical cause of Dority's death, i.e., that the fall caused Dority's injuries and death. Even so, the circumstances and cause of Dority's tragic fall remained unclear, and Leonard did not designate an expert on the cause of the fall itself, including Nurse Tache.

Defendants in their motion for summary judgment pointed out this evidentiary gap,[3] and the district court found that "[p]laintiff did not designate Tache to testify on whether defendants' deviations from any standard of care caused Dority's fall[.]" Aplt. App. IV at 31. Leonard's summary judgment response cited testimony from Nurse Tache's deposition, but it did not refute that Nurse Tache did not designate an expert opinion on causation or what caused Dority's fall.

The district court then reviewed Nurse Tache's opinion that Smoky Hill had departed from the standard of care in six ways in its care for Dority.

---

[3] *See* Aplt. App. II at 10 ("Plaintiffs' physician expert Dr. Kirby was the only expert designated to provide causation opinions."); *id.* at 24–25 (same).

It concluded, however, that Nurse Tache's report failed to explain how any specific measures suggested by Nurse Tache would have prevented Dority's fall, or how any of the six departures of the standard of care actually caused the fall. Rather, Nurse Tache's generic opinion that the fall was "prevent[able,]" *Id.* at 32, was conclusory and speculative, so the district court found it immaterial under the Federal Rule of Civil Procedure 56 summary judgment standard.

The district court granted summary judgment for Defendant, holding that Leonard failed to offer sufficient evidence on proximate cause to create a genuine issue of material fact. The district court began by explaining that its ruling did "not turn on whether expert testimony is required to establish defendants' deviation from the requisite standard of care or whether defendants' deviation was the proximate cause of Dority's fall." Aplt. App. IV at 31. Instead, summary judgment was proper because "[t]he record is completely devoid of evidence, from lay or expert sources, that Dority's fall was the proximate result of any breach of duty by either defendant." *Id.*

Although Defendants did not move to exclude either expert witness, the district court's summary judgment decision invoked *Daubert* and Federal Rule of Evidence 702 and further suggested that neither expert's testimony was sufficient under the *Daubert* framework. In doing so, it found

that both experts offered opinions "based on the incorrect legal premise that

failure to prevent an accident is sufficient to find liability":

> Under Rule 702, Fed. R. Evid., and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), expert testimony from Tache and Dr. Kirby on the issue of causation would cause confusion and delay. Their opinions are based on the incorrect legal premise that failure to prevent an accident is sufficient to find liability, and are tethered to specific evidence about the circumstances of the fall. The record is totally devoid of evidence about how Dority fell or why.
>
> Importantly, no other residents or staff witnessed Dority's fall the morning of April 18, 2021. Thus, no witnesses can testify to what happened that morning or what, if any, precautions would have prevented a fall under the circumstances. To submit this question to a jury would force them to speculate whether – even if defendants failed to exercise appropriate fall-related interventions and adequately supervise and monitor Dority – those deviations from the standard of care were the proximate cause of his fall.

Aplt. App. IV at 34.

Ultimately, the district court held that Leonard failed to offer any fact

or expert evidence on proximate cause and "[a]bsent such evidence, no

reasonable jury could hold defendants liable without speculating about the

circumstances or reasons for his fall." *Id.* at 35.

## II.  STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo

applying the same standards as the district court. *Est. of Beauford v. Mesa

Cnty.*, 35 F.4th 1248, 1261 (10th Cir. 2022). Summary judgment is

7

appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In conducting our review, we view the factual record "in the light most favorable to the [nonmovant]." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).

At the same time, "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings." *Est. of Hurtado v. Smith*, 119 F.4th 1233, 1236 (10th Cir. 2024) (citation omitted). As we have explained, "the nonmovant 'must go beyond the pleadings and designate specific facts' as to that element to survive summary judgment." *Id.* (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

## III.  DISCUSSION

We affirm the district court's summary judgment rulings. While it cited and discussed *Daubert* and Rule 702, the viability of the district court's decision did not depend on *Daubert* or the exclusion of Nurse Tache's testimony on causation. Indeed, Leonard fails to engage with the district court's core ruling that there was insufficient fact *or* expert evidence to reach a jury and that Nurse Tache's testimony was inherently speculative.

### A.  Proximate Cause

We first address the district court's ruling that Leonard failed to introduce sufficient evidence to create a genuine issue of material fact on

8

proximate cause. Because this case is in federal court based on diversity jurisdiction, we "apply state substantive law and federal procedural law." *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017). As a result, we apply Kansas substantive law.

Under Kansas law, a negligence claim requires a plaintiff to establish (1) the defendant owed a duty to the plaintiff, (2) a breach of that duty, (3) an injury to the plaintiff, and (4) "proximate cause, which means a causal connection between the duty breached and the injury." *Hale v. Brown*, 197 P.3d 438, 440 (Kan. 2008). The mere fact that "someone was injured is not of itself sufficient to predicate liability. It is familiar law that negligence is never presumed; it must be established by proof." *Goodloe v. Jo-Mar Dairies Co.*, 185 P.2d 158, 164 (Kan. 1947) (citations omitted). In other words, "negligence is not actionable unless it is the proximate cause of injury." *Id.* at 165.

The district court granted summary judgment based on proximate cause, and it is the only element at issue on appeal. Under Kansas law, the proximate cause of an injury is "the cause that in a natural and continuous sequence, unbroken by any [superseding] cause, both produced the injury and was necessary for the injury. The injury must be the natural and probable consequence of the wrongful act." *Hale*, 197 P.3d at 440; *see also Puckett v. Mt. Carmel Reg'l Med. Ctr.*, 228 P.3d 1048, 1060 (Kan. 2010)

9

(same). Courts developed proximate cause to restrict the zone of tort liability; a defendant is "not responsible for all *possible* consequences of their negligence, but only those consequences that are *probable* according to ordinary and usual experience." *Hale*, 197 P.3d at 440.

Proximate cause has two components: causation in fact and legal causation. *Burnette v. Eubanks*, 425 P.3d 343, 350 (Kan. 2018) (citation omitted). To satisfy causation in fact, the plaintiff must "prove a cause-and-effect relationship" between a defendant's actions and the plaintiff's injuries. *Id.* For legal causation, the plaintiff must establish that "it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes was foreseeable." *Id.* Thus, Leonard was required to show not only a departure from the standard of care but also "that the negligence caused the injury." *Bacon v. Mercy Hosp. of Ft. Scott*, 756 P.2d 416, 420 (Kan. 1988).

Expert testimony on proximate cause is sometimes, but not always, required in medical malpractice or nursing home negligence cases. If the standard of care and duties owed by a doctor or a nursing home are not common knowledge or apparent to the average layperson, expert testimony is required to establish the accepted standard of care and to prove causation. *Id.* In other words, "expert testimony is necessary only if the matter is outside the common knowledge of the jury." *Tudor v. Wheatland*

10

*Nursing L.L.C.*, 214 P.3d 1217, 1222 (Kan. Ct. App. 2009). This "common knowledge" test – not the "classification" of a case as "ordinary negligence" – determines whether the testimony of an expert witness on causation is required. *Id.*

In this case, Leonard does not dispute that an expert was required to prove the proximate cause for Dority's fall. And when an expert witness is offered, they "must confine their opinions to matters in issue which are certain or probable and not testify as to mere possibilities." *Bacon*, 756 P.3d at 420; *accord Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 977 (10th Cir. 2018) (applying federal law).

We agree with the district court that Leonard failed to offer sufficient fact or expert evidence to create a genuine issue of material fact on proximate cause. Contrary to Leonard's argument, the district court did not base its ruling entirely on its exclusion of Nurse Tache under *Daubert*. Instead, the district court stated: "[t]he record is completely devoid of evidence, from lay or expert sources, that Dority's fall was the proximate result of any breach of duty by either defendant." Aplt. App. IV at 31.

Leonard sidesteps this core holding, insisting that because she provided an expert witness, summary judgment was improper. But our summary judgment standard "requires more than mere speculation." *Est. of Hurtado*, 119 F.4th at 1238 (citation omitted); *see also GeoMetWatch Corp.*

11

*v. Behunin*, 38 F.4th 1183, 1205 (10th Cir. 2022) (explaining that "the nonmovant may not evade summary judgment by speculating about possibilities or hypotheticals that have de minimis to no support in the record"). Offering "conclusory allegations" or "unsupported speculation" does not satisfy the nonmovant's burden at summary judgment. *GeoMetWatch Corp.*, 38 F.4th at 1214.

Nurse Tache's deposition testimony offered "unsupported" and "conclusory" statements that Dority's fall could have been prevented. *Roberts*, 884 F.3d at 977. But "such statements, even from experts, are insufficient to defeat summary judgment." *Id.* "It is axiomatic that an expert, no matter how good [her] credentials, is not permitted to speculate." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000). Indeed, an expert's opinions "must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation[.]" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995)).

At summary judgment, the district court held there were insufficient facts to enable an expert to determine the cause of Dority's fall, nor did Nurse Tache offer that opinion. Nurse Tache opined that, generally, a nursing plan and adequate staffing are likely to prevent falls by residents.

But she failed to designate any opinion in her expert report regarding how or why Dority fell, or how Smoky Hill specifically caused Dority's fatal fall. And while Nurse Tache "criticized defendant's documentation practices" as to the fall, "she did not implicate them" in Smoky Hill's alleged negligence. Aplt. App. IV at 32. Ultimately, as the district court concluded, Nurse Tache's opinion on causation was "that defendants 'failed to prevent an avoidable fall.' This opinion does not create a genuine issue of material fact whether any alleged breach of defendants' duty of care caused Dority's injury." *Id.* (citation omitted).

Not only was Nurse Tache's testimony conclusory, but it was also inconsistent with Leonard's theory on appeal. *See Bacon*, 756 P.2d at 420 (emphasizing the "contradictory testimony" on causation provided by the plaintiff's expert witnesses). In Nurse Tache's deposition, she testified that there are "possibly five different versions" of how Dority might have fallen and broken his hip. Aplt. App. III at 102. She did not identify any version as being probable or the most likely; rather, she testified that "[w]e have no idea" how Dority fell. *Id.* at 102–03. On appeal, Leonard narrows to one of the five versions: relying solely on a phone call from Smoky Hill to Leonard the morning of the fall, Leonard says that she was told that Dority was dropped while being transferred by only one nurse, when two nurses were

13

needed, and thus a nursing care plan should have been in place to prevent the fall.

When the Defendants moved for summary judgment before the district court and put causation at issue, Leonard did not argue that this phone call created a genuine issue of material fact as to the cause of the fall. Her failure to raise this argument below forfeits her right to raise it for the first time on appeal, compounded because Leonard also failed to argue the district court committed plain error. *Parker Excavating, Inc. v. Lafarge West, Inc.*, 863 F.3d 1213, 1223 (10th Cir. 2017); *Richison v. Ernest Grp., Inc.,* 634 F.3d 1123, 1128 (10th Cir. 2011).

Also, Leonard insists correctly that her version of the facts must be taken as true at summary judgment because she is the nonmovant. "However, because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the

record."[4] *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). And more to the point, Nurse Tache testified that she was *not* claiming that Dority fell while being transferred. *See Id.* at 85 ("I didn't say he was being transferred at that time, no."). Thus, Nurse Tache's testimony confirms the lack of factual or expert support for Leonard's case.

More fundamentally, Leonard failed to properly designate Nurse Tache as an expert offering an opinion on the proximate cause of Dority's fall. Recall that the district court found, "[p]laintiff did not designate Tache to testify on whether defendants' deviations from any standard of care caused Dority's fall[.]" Aplt. App. IV at 31.

Expert opinions must be properly designated in line with the requirements listed in Federal Rule of Civil Procedure 26(a)(2). *See*

---

[4] Even if this argument was not forfeited, there is no support in the record for this version of the facts beyond Leonard's uncertain testimony during her deposition. A genuine dispute of material fact exists when the evidence is such that a "reasonable jury could return a verdict for the non-moving party." *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016) (citations omitted). During her deposition, Leonard testified that she did not know what time she was called, does not know who from Smoky Hill called her, nor whether the caller was involved in the event. Aplt. App. IV at 172-73. She also had "no idea" whether her father was standing when he fell, as opposed to getting out of bed and falling. *Id.* at 185. When pressed, she said, "I'm assuming that's what happened," meaning that her version of his fall (being dropped) was the correct version. *Id.* This assumption and uncertainty falls short of the genuine dispute standard.

15

*Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 951–52 (10th Cir. 2002) (explaining that Rule 26(a)(2) requires expert reports to contain a complete statement of all opinions to be expressed while Federal Rule of Civil Procedure 37(c)(1) requires the exclusion of any undesignated opinions, unless the failure was substantially justified or harmless) (citations omitted)). Leonard does not show that either exception to Rule 37(c)(1) applies here, and an expert may not testify about new theories for the first time in a deposition. Thus, Leonard's failure to properly designate Nurse Tache as an expert on proximate cause defeats her arguments on appeal.

Summary judgment was properly entered based on a lack of evidence on proximate cause. If this case had proceeded to trial, the jury could have only speculated about how and why Dority fell. *See Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1340 (10th Cir. 2017) (affirming that the plaintiff failed "to meet the threshold necessary to survive summary judgment on the issue of causation"); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 780 (10th Cir. 2013) ("Mere speculation . . . is not sufficient to establish causation.").

### B. Exclusion Under *Daubert*

Next, we address Leonard's fairness argument regarding an expert witness excluded under Rule 702 and *Daubert*. Leonard argues that the

16

district court improperly conducted an impromptu and informal Rule 702 and *Daubert* analysis of Nurse Tache in the summary judgment opinion, without any notice, a *Daubert* hearing, or the filing of any *Daubert* motion (or argument) by Defendants.

We review a district court's exclusion of expert witness testimony under *Daubert* and Rule 702 for an abuse of discretion. *Frederick v. Swift Transp. Co.*, 616 F.3d 1074, 1082–83 (10th Cir. 2010). "And we review de novo whether the district court applied the proper legal standard under *Daubert*." *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022).

We generally agree with Leonard that a district court should usually hold a *Daubert* hearing before excluding expert testimony, and it should also make a fully developed record that we can review on appeal. But in this case, the failure to do so was immaterial. We conclude that any error by the district court in conducting a *sua sponte* review under Rule 702 and *Daubert* review is not reversible error for three reasons.

First, as explained, Leonard failed to designate Nurse Tache to offer an opinion on proximate cause. Thus, invoking *Daubert* was superfluous because there was no properly designated causation opinion from Nurse Tache to exclude in the first place. Defendants made this argument in their summary judgment motion, providing notice to Leonard before the entry of summary judgment.

17

Second, a district court is required to enforce the *Daubert* safeguards, even if the opposing party fails to challenge the admissibility of an expert's testimony. The district court's role under *Daubert* is a "gatekeeper inquiry under Rule 702[.]" *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000). And although "the district court has discretion in *how* it conducts the gatekeeper function, we have recognized that it has no discretion to avoid performing the gatekeeper function." *Dodge*, 328 F.3d at 1223. If a district court is to play the role of "gatekeeper," it must ensure only valid expert testimony reaches a jury, even if the opposing party fails to file a *Daubert* motion.

Third, Leonard focuses almost entirely on the alleged technical violation committed by the district court. But Leonard fails to ever substantiate that Nurse Tache designated a causation opinion free of speculation. In other words, Leonard criticizes the district court's *Daubert* analysis, but she fails to explain how *Daubert* briefing or a hearing would have changed the outcome. Leonard was obligated to present sufficient summary judgment evidence, and additional *Daubert* procedures would not have cured the lack of sufficient causation evidence. As a result, any error committed by the district court on *Daubert* does not require us to reverse.

In sum, we discern no reversible error on this issue.

**AFFIRMED**.

Entered for the Court


Richard E.N. Federico
Circuit Judge

No. 24-3009, Leonard v. HMG Park Manor of Salina, et al.

**KELLY**, Circuit Judge, dissenting.

The court holds that the evidence was insufficient to create a genuine issue of material fact and that Nurse Tache's testimony was inherently speculative. My review of the record persuades me that a jury trial is warranted.

On summary judgment, we cannot disregard the obvious factual dispute over the circumstances of Mr. Dority's fall. As the court's order and judgment recites, Ms. Leonard testified that Nurse Stika telephoned her and admitted she had "dropped" Mr. Dority while attempting to transfer him. I Aplt. App. 231; IV Aplt. App. 819. Contrary to one member of this panel's assertion, nothing is uncertain about Ms. Leonard's statement that the person she spoke with told her that they dropped Mr. Dority while transferring him. IV Aplt. App. 819 ("I know the lady told me on the phone, and she told me they were transferring him from one chair to the other when they dropped him."); see also id. at 806–07, 827, 832, 837. Though Nurse Stika's progress note claimed that she found Mr. Dority lying on the floor, this note was created at 3:59 a.m. — almost three hours after Nurse Stika called 9-1-1. I Aplt. App. 231. Nurse Stika was an employee of the nursing home. Id. at 226.

This testimony and evidence established a factual dispute over the circumstances of Mr. Dority's fall. According to the plaintiff, "[Nurse] Stika dropped Mr. Dority while she alone attempted to transfer him from one chair to another causing a right hip fracture." Id. at 231. According to Defendants, "Mr. Dority was not transferred . . . by [Nurse] Stika or any other Smoky Hill employee, rather Mr. Dority attempted to transfer

himself and walk by himself for an unknown reason and fell[.]" Id. at 245. This clear factual dispute was recognized in the pretrial order. Id. at 231, 238, 245.

The court also states that Nurse Tache failed to designate an opinion on how Smoky Hill caused Mr. Dority's fatal fall. But Nurse Tache made several criticisms of Smoky Hill's inadequate staffing on the night of Mr. Dority's fall that applied to the many possible variations on what happened. Id. at 68–71; III Aplt. App. 552. Nurse Tache also testified that her criticisms regarding Smoky Hill's poor documentation and failure to implement a comprehensive care plan applied regardless of which version of Mr. Dority's fall was proven. I Aplt. App. 68–71; III Aplt. App. 552. Moreover, Mr. Dority was catheterized on the night of his fall, and Nurse Tache found it highly unlikely that he was proceeding down the hall alone at full speed. III Aplt. App. 497, 568–72.

To be sure, Nurse Tache did not cabin her report to a specific set of facts, nor did she directly implicate Smoky Hill's deviations from the standard of care in Mr. Dority's fall. But I fail to see how she could have done so when the circumstances of Mr. Dority's fall were still the subject of a factual dispute containing "possibly five different versions of the same event." Id. at 550–51. And it comes as no surprise that Nurse Tache could not divine the truth behind Mr. Dority's fall from the record when she criticized, among other things, Smoky Hill's lacking documentation processes. I Aplt. App. 68. In light of this factual dispute, I find her conclusion that "these deviations were a probable cause of harm to Mr. Dority" to be sufficient. Id. at 60. Neither Nurse Tache nor this court has the option of deciding which facts she either ignores or disbelieves.

2

In moving for summary judgment, the Defendants bore the initial burden of "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). But while Defendants moved for summary judgment on the issue of causation, II Aplt. App. 277, they never addressed Ms. Leonard's theory that Nurse Stika dropped Mr. Dority while transferring him. Id. at 258–63. Granted, Ms. Leonard's counsel should have come up with a stronger response on causation. Rather than highlight Ms. Leonard's testimony and alert the district court to the factual dispute it raised, counsel proceeded from the faulty assumption that the only issue before the district court at summary judgment was the legal issue of whether a nurse could testify as to causation. Id. at 347–49; Aplt. Br. at 3.

Even despite counsel's shortcomings, the district court itself reviewed the record and its disputed facts "in the light most favorable to plaintiff[.]" IV Aplt. App. 658–59. Indeed, though neither party presented the substance of Nurse Tache's expert report, the court took it upon itself to review her report for the purposes of the motion. Id. at 665 n.5. Yet while the district court's review of the record led it to credit Defendants' version of Mr. Dority's fall, id. at 660, and recognize the version that Mr. Dority gave to hospital staff, id., it made no mention of Ms. Leonard's version. Again, I recognize that counsel failed to submit Ms. Leonard's deposition testimony in opposing summary judgment. II Aplt. App. 347–49. But the district court seems to have overlooked Ms. Leonard's testimony in concluding that "[t]he record is totally devoid of evidence about how

3

[Mr.] Dority fell or why" and "no other residents or staff witnessed [Mr.] Dority's fall[.]" IV Aplt. App. 668.

In short, I believe that Nurse Tache's criticisms, together with Ms. Leonard's testimony, create an obvious fact issue appropriate for a jury over whether Mr. Dority fell on his own or was dropped. If he was dropped while being transferred by one nurse, then Nurse Tache's criticisms about inadequate staffing and care planning would prove that Smoky Hill's deviations from the standard of care caused Mr. Dority's fall.